996 F.2d 667
 Kermit SMITH, Jr., Petitioner-Appellee,
v.
Gary DIXON, Warden, Central Prison, Raleigh, North Carolina,
Respondent-Appellant.
Kermit SMITH, Jr., Petitioner-Appellant,
v.
Gary DIXON, Warden, Central Prison, Raleigh, North Carolina,
Respondent-Appellee.
 Nos. 91-4011, 91-4012.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 30, 1992.
Decided June 11, 1993.
Amended by Order Filed July 19, 1993.
Rehearing In Banc Granted July 23, 1993.
 
 Joan Herre Byers, Barry Steven McNeill, Sp. Deputy Attys. Gen., NC Dept. of Justice, Raleigh, NC, argued (Lacy H. Thornburg, Atty. Gen., of counsel), for respondent-appellant.
 Martha Melinda Lawrence, Patterson, Harkavy, Lawrence, Van Noppen & Okun, Raleigh, NC, C. Frank Goldsmith, Jr., Goldsmith & Goldsmith, P.A., Marion, NC, argued (NC Resource Center, Raleigh, NC, of counsel), for petitioner-appellee.
 Before WILKINS, Circuit Judge, and BUTZNER and SPROUSE, Senior Circuit Judges.
 OPINION
 SPROUSE, Senior Circuit Judge:
 
 
 1
 Kermit Smith, Jr. is a North Carolina prisoner who was sentenced to death following his conviction of the December 3, 1980 first-degree murder, second-degree rape, and common-law robbery of Whelette Collins. The district court granted Smith's habeas corpus petition,[1] finding that an instruction given to the jury that sentenced Smith to death was unconstitutionally vague, and required that Smith receive a new sentencing hearing. Smith v. Dixon, 766 F.Supp. 1370 (E.D.N.C.1991). The State of North Carolina, through the warden of the prison where Smith is incarcerated, appeals this decision. Smith cross-appeals, arguing that the district court erred in failing to find that the additional grounds he advanced provided a basis for relief. We affirm.
 
 I. BACKGROUND
 
 2
 The gruesome facts surrounding Collins's long ordeal and subsequent murder are described in the opinion of the district court, id. at 1373-74, and the decision of the Supreme Court of North Carolina affirming Smith's conviction and sentence on direct appeal, State v. Smith, 305 N.C. 691, 292 S.E.2d 264, cert. denied, 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed.2d 622 (1982). Briefly, Smith kidnapped Collins and her two companions at gunpoint and took them to deserted woods. The psychological and physical torture Collins experienced lasted for many hours before she was murdered. While her two friends were locked in the trunk of a car, Smith threatened Collins with death and brutally raped her. Following the rape, Smith forced her to remain naked outside at night in below freezing December temperatures for a substantial period of time, mocking her as she begged him for clothing or a blanket. Smith then bludgeoned Collins with a cinder block and dragged her body to a quarry pond where he crammed her feet inside the cinder block to make her body sink. The blunt trauma to Collins's head fractured her skull; she died from this injury. Her companions escaped from the trunk of the car physically unharmed.
 
 
 3
 After the jury convicted Smith, the trial court held a sentencing hearing in which it submitted four aggravating circumstances and five mitigating circumstances for the jury's consideration. Regarding one of the aggravating circumstances, whether the murder was "especially heinous, atrocious or cruel," the court instructed:[E]very murder is not especially heinous, it is not atrocious nor cruel. While every murder, if it results from an unlawful killing, of course, is a violation of the law, but it does not necessarily mean that there is anything aggravated about it or that it was especially heinous or atrocious or cruel. And our Supreme Court has said that the words "especially heinous, atrocious or cruel" means extremely or especially or particularly heinous or atrocious or cruel. Heinous means extremely wicked or shockingly evil. Atrocious means marked by or given to extreme wickedness, brutality or cruelty, marked by extreme violence or savagely fierce. It means outrageously wicked and violent. Cruel means designed to inflict a high degree of pain, utterly indifferent to or the enjoyment of suffering of others.
 
 
 4
 The jury found the existence of all four of the aggravating circumstances submitted by the judge: that Smith committed the murder while (1) raping, (2) robbing, and (3) kidnapping Collins, and (4) that the murder was "especially heinous, atrocious or cruel." The jury found the existence of one of the five mitigating circumstances: that Smith committed the murder while under the influence of a mental or emotional disturbance. The jury determined that the aggravating circumstances outweighed the mitigating circumstances, and recommended that Smith be sentenced to death.
 
 A. Direct Appeal
 
 5
 Smith appealed his conviction and sentence, but did not challenge the constitutionality of the heinousness factor. The Supreme Court of North Carolina conducted a review of the record pursuant to N.C.Gen.Stat. § 15A-2000(d), determined that the evidence was sufficient to support each of the aggravating factors, and affirmed Smith's conviction and sentence. Smith, 292 S.E.2d at 276-77. The United States Supreme Court denied Smith's request for certiorari, and Smith's conviction became final on November 29, 1982. Smith v. North Carolina, 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed.2d 622 (1982).
 
 B. Motion for Appropriate Relief
 
 6
 Smith filed his first application for postconviction relief in North Carolina superior court in June of 1983. See N.C.Gen.Stat. § 15A-1415. Smith's Motion for Appropriate Relief raised 57 grounds attacking his conviction and sentence, which were grouped into five "claims." In Claim IV Smith raised for the first time the argument that the § 15A-2000(e)(9) statutory aggravating factor of heinousness was unconstitutionally vague in violation of the Eighth and Fourteenth Amendments, and that the jury was not charged with a constitutionally limiting definition of this factor. In addition, in 13 of the 14 issues he raised in Claim V, Smith maintained that he was denied his Sixth Amendment right to effective assistance of counsel at trial. Smith alleged in his Motion for Appropriate Relief two errors at the direct appeal stage: under Claim IV he argued that North Carolina's system of appellate review of death sentences was constitutionally inadequate, and under Claim V he argued that he had been denied the right to effective assistance of appellate counsel because his attorney had failed to advance on direct appeal many of the issues raised in his Motion for Appropriate Relief. Before the State responded to Smith's motion, the superior court entered an order summarily denying all of Smith's claims, except those based on ineffective assistance (Claim V). State v. Smith, Nos. 80 CRS 15265, 15266, 15271 (N.C.Super.Ct. Aug. 19, 1983).[2]
 
 
 7
 Following an evidentiary hearing on the allegations of ineffective assistance, the superior court denied the remaining claims in Smith's Motion for Appropriate Relief. State v. Smith, Nos. 80 CRS 15265, 15266, 15271 (N.C.Super.Ct. Dec. 16, 1983). The Supreme Court of North Carolina summarily denied Smith's petition for a writ of certiorari, State v. Smith, 333 S.E.2d 495 (N.C.1985), as did the United States Supreme Court, Smith v. North Carolina, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 565 (1985).[3]
 
 C. District Court's Opinion
 
 8
 In May 1988, Smith filed his habeas corpus petition in the federal District Court for the Eastern District of North Carolina, seeking relief under 28 U.S.C. § 2254. The district court, in an opinion rendered before the Supreme Court's decision in Coleman v. Thompson, --- U.S. ----, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), concluded that consideration by a federal court of Smith's claims was not barred by procedural default because the last state court opinion addressing these claims had not included a plain statement that it based the decision on state grounds. Smith v. Dixon, 766 F.Supp. 1370, 1376 (E.D.N.C.1991). Turning to the merits, the district court found that the heinousness instruction was unconstitutionally vague under Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and that Smith was not foreclosed by Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), from raising this as error. Smith, 766 F.Supp. at 1379-86. It further held that the Supreme Court of North Carolina did not cure the vagueness error by reweighing the evidence or conducting a constitutional harmless-error analysis. Id. at 1386. The district court declined the State's invitation to conduct harmless-error analysis in the first instance, id., and rejected the numerous other errors asserted by Smith, id. at 1386-96. The court conditionally granted habeas relief, ordering that Smith's death sentence be set aside unless the State retried him within 180 days. Smith v. Dixon, No. 88-337 (E.D.N.C. Aug. 14, 1991). In addition, the district court stayed entry of judgment to permit the State to petition the Supreme Court of North Carolina for "further review ... in accordance with Clemons v. Mississippi." Id. (citing Clemons, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990)).
 
 
 9
 In October 1991, the State petitioned the Supreme Court of North Carolina to clarify the basis for the decision it rendered in Smith's direct appeal. The Supreme Court of North Carolina denied the request, believing that it lacked jurisdiction to hear the matter. State v. Smith, 330 N.C. 617, 412 S.E.2d 68 (1991). Accordingly, the district court ordered its prior decision into effect. Smith v. Dixon, No. 88-337 (E.D.N.C. Dec. 2, 1991). Both the State and Smith appeal.
 
 II. REVIEWABILITY OF FEDERAL CLAIMS[4]
 
 10
 Before reaching the merits of Smith's claims, we must determine whether it is appropriate to do so. Federal habeas courts generally "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, --- U.S. ----, ----, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). This doctrine bars federal courts from addressing federal claims raised under § 2254 when a state court has declined to grant relief on them because the petitioner failed to meet a state procedural requirement. Id. at ----, 111 S.Ct. at 2557. The first issue this court must decide, then, is whether Smith has procedurally defaulted on his federal claims.
 
 
 11
 As the Supreme Court has stated, determining whether a state decision denying federal claims rests on federal or state law is not always easy because often state-court opinions are unclear concerning the basis for their rulings. See id. at ----, 111 S.Ct. at 2555. To assist federal courts in determining when application of the independent and adequate state grounds doctrine bars federal proceedings, the Court has provided the following direction:
 
 
 12
 "[W]hen ... a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and interdependence of any possible state law ground is not clear from the face of the opinion, [federal courts] will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so."
 
 
 13
 Id. at ----, 111 S.Ct. at 2556 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983)).
 
 
 14
 Therefore, when a federal court receives a habeas petition presenting federal claims, it may address those claims only "if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground." Id. --- U.S. at ----, 111 S.Ct. at 2557.
 
 
 15
 Under North Carolina law, a Motion for Appropriate Relief may be denied when "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C.Gen.Stat. § 15A-1419(a)(3). Because Smith could have challenged the constitutionality of the heinousness factor in his direct appeal to the North Carolina Supreme Court, the superior court properly could have found that presentation of this claim in a later Motion for Appropriate Relief was procedurally barred.[5] It is not, however, enough that the superior court could have relied on procedural bar, for it actually must have based its decision on procedural default in order to prevent federal habeas review. See Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985).[6]
 
 
 16
 In its order denying Smith's Motion for Appropriate Relief, the superior court did not include a plain statement either that its decision rested on procedural bar or that it rested on the merits. It stated merely: "The court has read the paperwriting and considered the arguments in support of the claims set out therein. The court finds as a fact that Claims No. I, II, III, and IV [including the vagueness challenge], set forth no probable grounds for relief." We think the circumstances in Smith's case are similar to the ones we considered in Nickerson v. Lee, 971 F.2d 1125 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993).
 
 
 17
 In Nickerson a panel of this court also reviewed a vague North Carolina superior court order denying a defendant's Motion for Appropriate Relief under N.C.Gen.Stat. § 15A-1419. The panel determined that the state court had denied the defendant's federal claims for substantive, not procedural, reasons. Nickerson, 971 F.2d at 1128-30. The superior court order reviewed by the Nickerson panel stated that "upon review of the motion and the file in the case [the court] finds that the petitioner has set forth no grounds for which he is entitled to a motion for appropriate relief." Id. at 1128. The Nickerson court held that this language showed that the superior court had denied the defendant's claims on the merits, not because of procedural default. Id. at 1129. The language "implies that the [superior] court reached and reviewed the merits of each of Nickerson's claims and concluded that he would not be entitled to relief on any of these claims." Id.
 
 
 18
 In Coleman v. Thompson, --- U.S. ----, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court reached the opposite conclusion in a contrasting factual situation. It determined that a Virginia court's order dismissing the defendant's late notice of appeal was grounded on independent state law, even though the order lacked a plain statement of the reason for the dismissal. The Supreme Court found that, in light of the surrounding circumstances, the state court's order "fairly appeared" to rest on procedural default. Id. at ----, 111 S.Ct. at 2559-61. Those surrounding circumstances were that (1) the Commonwealth of Virginia had based its motion to dismiss entirely on procedural grounds (the late filing), and (2) the court's order "dismissed" rather than "denied" the defendant's notice of appeal. Id.; see Ylst v. Nunnemaker, --- U.S. ----, ----, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). The Court found that these clues explained the state dismissal order, which, after reciting the papers submitted by the parties and their filing dates, stated only: "Upon consideration whereof, the motion to dismiss is granted and the petition for appeal is dismissed." Coleman, --- U.S. at ----, 111 S.Ct. at 2553.
 
 
 19
 The Nickerson court distinguished Coleman, determining that a similar examination of the surrounding circumstances revealed no clues to the basis for the North Carolina superior court's order. Unlike Coleman, where the State had responded to the defendant's motion by arguing procedural bar, "[h]ere, it appears that North Carolina did not respond to Nickerson's motion at all. Thus, unlike in Coleman, there is no basis for concluding ... that the state court's judgment rested even in part on state law." Nickerson, 971 F.2d at 1129. Smith's case, in that respect, is identical to Nickerson: North Carolina did not respond to Smith's Motion for Appropriate Relief before the superior court denied Claims I-IV, which included the vagueness challenge.[7]
 
 
 20
 Like Nickerson and unlike Coleman, a review of other surrounding circumstances fails to disclose whether the superior court denied Smith's vagueness claim on procedural grounds or on the merits. At least three factors point to the order's inherent vagueness. First, although the court "denied" rather than "dismissed" Smith's Motion for Appropriate Relief, the distinction does not provide the same guidance as it did in Coleman because North Carolina law, unlike Virginia law, provides that procedurally barred issues may be "denied" rather than "dismissed" when presented in a Motion for Appropriate Relief. N.C.Gen.Stat. § 15A-1419(a)(3). Second, the timing of the superior court's order does not clarify whether the court denied Smith's vagueness claim on procedural grounds or on the merits, because it issued the denial more than two months after Smith filed his motion.[8] Finally, the superior court's separation of Claims I-IV from Claim V does not illuminate the basis for its denial of the vagueness claim. The bottom line is that we cannot conclude that the superior court denied all the issues in Claims I-IV (including the vagueness challenge) for reasons of procedural default. The inclusive nature of the order's language, like that in Nickerson, implies that the superior court considered the merits of the issues Smith raised in Claims I-IV. Certainly Smith's challenge to the constitutional adequacy of North Carolina's appellate review of death sentences, an issue he raised in Claim IV, was denied on the merits: it could not have been procedurally barred, because the first time that Smith could raise the issue was in his Motion for Appropriate Relief.[9] Moreover, several of the issues Smith raised in Claims I-IV had been rejected on the merits by the North Carolina Supreme Court on direct appeal. Therefore, these issues were not procedurally barred; they were denied either under § 15A-1419(a)(2) because the superior court decided not to re-examine the merits,[10] or because the superior court re-examined the merits and rejected them anew.
 
 
 21
 Because nothing in the surrounding circumstances indicates that the superior court denied any claims in Smith's Motion for Appropriate Relief for reasons of procedural bar, and because we are bound by the holding of Nickerson, a case virtually indistinguishable from this one, we conclude that the district court correctly determined Smith was not procedurally barred from federal habeas review of his claims.
 
 
 22
 III. MERITS OF THE VAGUENESS CLAIM (STATE'S APPEAL)
 
 
 23
 Having held that the district court correctly ruled on the procedural-default issue, we review its rulings on the merits, beginning with its holding that the unconstitutional vagueness of the heinousness factor in Smith's sentencing hearing was not cured by the North Carolina Supreme Court on direct appeal. In his habeas petition Smith attacked the North Carolina statutory aggravating factor for "especially heinous, atrocious, or cruel" murders, see N.C.Gen.Stat. § 15A-2000(e)(9), and the trial court's instruction to the jury on this factor. Smith argued that the statutory definition and limiting instruction were unconstitutionally vague under Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). The district court agreed, and the State concedes as much on appeal.[11] The State contends, however, relying on Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), that the North Carolina Supreme Court cured the error on direct appeal.
 
 
 24
 Because the district court found that the North Carolina Supreme Court did not cure the error on direct appeal, it granted Smith a new sentencing hearing. We agree that the state supreme court did not remedy the vagueness error.
 
 
 25
 A. North Carolina Supreme Court Did Not Cure Vagueness Error
 
 
 26
 In Clemons the Supreme Court held that when sentencing instructions on the heinousness factor are found to have been unconstitutionally vague, a state appellate court in a "weighing" state--such as North Carolina--may remedy the error in one of three ways: (1) by finding the error harmless beyond a reasonable doubt, (2) by reweighing the aggravating and mitigating circumstances without the heinousness factor, or (3) by reweighing the aggravating and mitigating circumstances, using the correct definition of heinousness as constitutionally narrowed by the state court's prior decisions. Id. at 751-52, 110 S.Ct. at 1449-50. The State contends that the vagueness error in Smith's sentencing hearing was cured under the third method. It argues that in Smith's 1982 direct appeal, the North Carolina Supreme Court, in reweighing the aggravating and mitigating circumstances in Smith's case, applied the constitutionally narrowed definition that the North Carolina courts had developed at the time. That definition requires "evidence that the murder in question involved brutality in excess of that which is normally present in any killing." State v. Martin, 303 N.C. 246, 278 S.E.2d 214, 220, cert. denied, 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981); State v. Goodman, 298 N.C. 1, 257 S.E.2d 569, 585 (1979). Excess brutality connotes a "conscienceless or pitiless crime which is unnecessarily torturous to the victim." Goodman, 257 S.E.2d at 585; see State v. Silhan, 302 N.C. 223, 275 S.E.2d 450, 479 (1981).[12]
 
 
 27
 The district court rejected the State's argument, finding it unclear whether the state supreme court, in reweighing the aggravating and mitigating circumstances, had applied North Carolina's constitutionally narrowed definition of heinousness. Smith, 766 F.Supp. at 1385. We agree. The state supreme court's ruling is not sufficiently clear for us to determine that it cured the vagueness error under Clemons. As the district court noted, the North Carolina Supreme Court did not cite Martin or Goodman or any other case applying North Carolina's constitutionally narrowed definition. Moreover, "[t]hat the court found elements of brutality and torture in the murder does not necessarily mean that it was tacitly attempting to apply the Martin/ Goodman standard." Id. The North Carolina Supreme Court's opinion is like the Mississippi Supreme Court's opinion reviewed by the Supreme Court in Clemons. The Clemons Court found it unclear whether the Mississippi Supreme Court had applied its narrowed definition of heinousness (a murder that is conscienceless or pitiless and unnecessarily torturous to the victim), even though the latter's opinion referred to "brutal and torturous facts." Clemons, 494 U.S. at 751, 110 S.Ct. at 1449. Finally, in this context, we are unpersuaded by the State's argument that the North Carolina Supreme Court clarified its opinion in Smith's 1982 direct appeal by citing Smith in a 1983 opinion. See State v. Oliver, 309 N.C. 326, 307 S.E.2d 304, 317-19 (1983) (citing Martin, Goodman, and Smith ). Because Oliver is a review of Oliver's sentence, not Smith's, it would be difficult to conclude that the Oliver court reweighed the aggravating and mitigating factors in Smith's case. See Richmond v. Lewis, --- U.S. ----, ----, 113 S.Ct. 528, 535-36, 121 L.Ed.2d 411 (1992).
 
 
 28
 B. Federal Habeas Court May Not Examine Vagueness Error for
 
 Harmlessness in the First Instance
 
 29
 Although the North Carolina Supreme Court did not cure the vagueness error, the State urges us to find the error harmless. The district court believed that it lacked the authority to determine whether the vagueness error was harmless. Smith, 766 F.Supp. at 1386 & n. 7 (stating that if it had the authority, it "would not hesitate to hold that the underlying facts satisfy the Martin/Goodman standard"). The State contends that the district court did have the power to engage in harmless-error analysis, and it asks us to conduct the analysis in the first instance, given the district court's dictum. We decline the invitation.
 
 
 30
 The Supreme Court has repeatedly referred to the power of state appellate courts to remedy a vagueness error such as the one here by conducting harmless-error analysis. See, e.g., Richmond v. Lewis, --- U.S. ----, ----, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992) ("Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus."); Sochor v. Florida, --- U.S. ----, ----, 112 S.Ct. 2114, 2123, 119 L.Ed.2d 326 (1992) (explaining how "state courts['] ... review for harmless federal error will pass federal scrutiny"); Stringer v. Black, --- U.S. ----, ----, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992) ("We require close appellate scrutiny of the import and effect of invalid aggravating factors to implement the well-established Eighth Amendment requirement of individualized sentencing determinations in death penalty cases."); id. at ----, 112 S.Ct. at 1140 ("[U]se of a vague or imprecise aggravating factor in the weighing process invalidates the sentence and at the very least requires constitutional harmless-error analysis or reweighing in the state judicial system."); Clemons v. Mississippi, 494 U.S. 738, 754, 110 S.Ct. 1441, 1451, 108 L.Ed.2d 725 (1990) (holding that "state appellate courts ... [may] engage in reweighing or harmless-error analysis when errors have occurred in a capital sentencing proceeding"); see also Barclay v. Florida, 463 U.S. 939, 958, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) (referring to the Florida Supreme Court's application of "its" harmless-error analysis); cf. Brecht v. Abrahamson, --- U.S. ----, ----, 113 S.Ct. 1710, 1719, 123 L.Ed.2d 353 (1993) (distinguishing constitutional harmless-error analysis on direct review by a state supreme court from constitutional harmless-error analysis on federal habeas review).[13] Significantly, even in cases decided on certiorari to federal habeas courts where the vague instruction, as here, violated the federal Constitution, cf. Barclay, 463 U.S. at 957-58, 103 S.Ct. at 3428-29 (vagueness error was a state-law violation), the Supreme Court has not remanded to the federal court for a determination whether the error was harmless, but has reiterated that it is up to the state appellate courts to remedy the error under one of the three Clemons methods, including harmless-error analysis. See, e.g., Stringer, --- U.S. at ----, 112 S.Ct. at 1140.
 
 
 31
 Like the two other Clemons methods of remedying vagueness errors, harmless-error analysis involves balancing: the reviewing court must decide whether the constitutional error affected the balance struck by the jury when it weighed aggravating circumstances against mitigating circumstances. Clemons, 494 U.S. at 754, 110 S.Ct. at 1451. This weighing of factual evidence, in our view, concerns a question of state law, "errors of which are not cognizable in federal habeas proceedings." Lewis v. Jeffers, 497 U.S. 764, 783, 110 S.Ct. 3092, 3103, 111 L.Ed.2d 606 (1990). Therefore, the district court properly refrained from conducting harmless-error analysis in the first instance, as do we. Our holding is in accord with decisions of the two other circuits that have considered the issue. Jeffers v. Lewis, 974 F.2d 1075, 1084 & n. 11 (9th Cir.1992); Wiley v. Puckett, 969 F.2d 86, 94 n. 8 (5th Cir.1992).
 
 IV. SMITH'S CROSS-APPEAL
 A. The McKoy Claim
 
 32
 Turning to Smith's cross-appeal, he raises only one issue which, in our view, merits detailed discussion--the issue involving the principle announced in McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). Smith alleged in his habeas petition that he was entitled to a new sentencing hearing because there was a reasonable likelihood that one or more jurors mistakenly believed they could, in weighing mitigating circumstances, consider only the evidence the jury had unanimously agreed was mitigating. McKoy holds that imposition of the death penalty under such circumstances violates the Eighth and Fourteenth Amendments of the Constitution. Id. at 444, 110 S.Ct. at 1234; see also Mills v. Maryland, 486 U.S. 367, 384, 108 S.Ct. 1860, 1870, 100 L.Ed.2d 384 (1988) (striking down Maryland's unanimity requirement).[14] Smith concedes that the sentencing verdict form in his case, unlike the one in McKoy, did not require unanimity for mitigating circumstances.[15] He argues, however, that the court's sentencing instructions were so misleading as to result in McKoy error.
 
 
 33
 He analogizes his case to State v. McNeil, 327 N.C. 388, 395 S.E.2d 106 (1990), cert. denied, --- U.S. ----, 111 S.Ct. 1403, 113 L.Ed.2d 459 (1991). Although the verdict form in McNeil did not require unanimity for mitigating circumstances, the North Carolina Supreme Court found McKoy error because the trial court's instructions could easily have misled the jurors into believing they could find no mitigating circumstance except by unanimous vote:
 
 
 34
 In its charge to the jury at the conclusion of the sentencing proceeding, the trial court used the word "unanimous" no less than thirteen times while instructing the jury concerning the two "Issues and Recommendation as to Punishment" forms that the jury was to complete. In the final mandate, the trial court instructed the jury that: "Your decision, your answers to any of the issues as to your final recommendation must be unanimous...." After the jurors had deliberated for approximately one day, the trial court inquired as to their progress. During that inquiry, the trial court stated: "Now as I indicated in my instructions to you, of course your answers to each of the issues must be unanimous in your recommendation in each case." Although the trial court never explicitly stated that the jury had to be unanimous concerning mitigating circumstances under Issue Two on the forms used, the trial court stated at least three times that the jury's answers to all the issues must be unanimous.
 
 
 35
 Id. 395 S.E.2d at 109. Thus, in the context of the overall charge, "the jury instructions gave rise to a reasonable likelihood that some of the jurors were prevented from considering constitutionally relevant evidence." Id. at 110.
 
 
 36
 The State distinguishes Smith's case from McNeil and analogizes it to Maynard v. Dixon, 943 F.2d 407 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1211, 117 L.Ed.2d 450 (1992), in which the Fourth Circuit found no McKoy error. Maynard is similar to McNeil in that the verdict form in neither case required a unanimous vote for mitigating circumstances; it is different, however, in that the Maynard trial court did not instruct the jury to answer all questions unanimously. Id. 943 F.2d at 420. Therefore, the Maynard court was satisfied that the sentencing instructions had not precluded a juror from considering mitigating circumstances that he or she, but not all the jurors, deemed relevant. Id. Because we find Smith's case more like Maynard than McNeil, we reject Smith's argument that McKoy error occurred during his sentencing hearing.
 
 
 37
 The sentencing instructions in Smith's case, like those in Maynard, omitted a general unanimity charge. The jury was told that it had to vote unanimously on Issues One (presence of aggravating circumstances), Three (aggravating factors outweigh mitigating factors), and Four (aggravating circumstances are severe enough to warrant death). The jury was not told, however, that it had to vote unanimously on Issue Two (presence of mitigating factors). In discussing Issue Two, the trial court explained each of the five potential mitigating circumstances, and told the jurors that they were to write "Yes" on the verdict form beside each mitigating circumstance for which "the defendant has satisfied you" of its existence. On Issue Three the court instructed: "The question is whether ... the weight of the circumstances you find to exist, as to whether those which are aggravating outweigh in your minds the mitigating circumstances" (emphasis added). On Issue Four it instructed the jurors to "weigh all the circumstances that you have found, if any, to be aggravating, those that you've found to be mitigating, and determine whether you find beyond a reasonable doubt that the aggravating circumstances found by you are ... sufficiently important, to call for the imposition of the death penalty" (emphasis added). Like Maynard and unlike McNeil, the court in Smith's case did not instruct the jurors that they could find the existence of a mitigating circumstance only by unanimous vote. Nor did the sentencing arguments of counsel include misleading statements. Accordingly, we find that Smith's sentencing hearing was not tainted by McKoy error.
 
 B. The "Recommendation" Claim
 
 38
 Smith's remaining assignments of error in his cross-appeal have little merit. First is his argument that the trial court violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985),[16] when it referred to the jury's decision whether to impose death as a "recommendation." As the district court correctly noted, Caldwell does not apply retroactively because it created a new rule under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Sawyer v. Smith, 497 U.S. 227, 235, 110 S.Ct. 2822, 2828, 111 L.Ed.2d 193 (1990). Moreover, even if Caldwell did apply retroactively, we have previously rejected Smith's argument in a similar case. Gaskins v. McKellar, 916 F.2d 941, 953 (4th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991).
 
 
 39
 C. The Claim of Ineffective Assistance on Appeal
 
 
 40
 Next, Smith contends that his appellate counsel rendered ineffective assistance by failing to present three significant claims on direct appeal: the vagueness issue, the Caldwell "recommendation" issue, and the trial court's sustaining an objection to a hypothetical question posed by Smith's attorney to the State's pathologist (see infra ). Even if we were to assume that counsel's failure to raise these claims on direct appeal violated the first prong of the Strickland test by being unreasonable, Smith clearly has not met the second requirement of Strickland: there is not a reasonable probability that the result in Smith's case would have been different had his attorney raised these claims, since we reject all three on the merits. See Strickland v. Washington, 466 U.S. 668, 688-95, 104 S.Ct. 2052, 2064-68, 80 L.Ed.2d 674 (1984).
 
 
 41
 D. The Claim of Ineffective Assistance at Trial
 
 
 42
 Smith's argument that his trial counsel rendered ineffective assistance is likewise weak. He contends that his attorneys insufficiently investigated and presented his defense during the guilt stage of the trial, and that they insufficiently developed and presented mitigating evidence during the sentencing stage. We are unpersuaded. We agree with the district court that the North Carolina superior court's factual findings on this issue are supported by the record evidence. See Smith, 766 F.Supp. at 1387. Under the reasoning of the district court, id. at 1388-91, we affirm the holding that counsel's efforts during the sentencing stage of Smith's trial did not violate Strickland, and we agree with the reasoning of the superior court, State v. Smith, Nos. 80 CRS 15265, 15266, 15271, at 27-31 (N.C.Super.Ct. Dec. 16, 1983), which the district court approved, see Smith, 766 F.Supp. at 1396, that counsel's efforts during the investigation stage did not violate Strickland.E. The Cross-Examination Claim
 
 
 43
 Smith's final challenge on cross-appeal is that the trial court violated his Sixth Amendment right to cross-examine a witness by sustaining an objection to a hypothetical question posed by Smith's attorney to the State's pathologist. The pathologist testified that Whelette Collins's injuries were consistent with blunt trauma caused by a cinderblock. On cross-examination, when Smith's attorney asked whether the injuries were also consistent with a fall from a twenty-foot cliff, the State's attorney objected, saying, "[T]here's no evidence of that." In fact, witnesses for the State had already testified that the crime scene contained a twenty-foot cliff, at the foot of which lay broken rocks. The court sustained the objection. Again, we are unpersuaded by Smith's contention that the court's action was reversible error. After the court sustained the objection, Smith's attorney rephrased the question, asking whether Collins's head injuries "could have been caused by a fall." The doctor testified that it was possible, though unlikely. Defense counsel asked whether there were "circumstances under which [the types of injuries Collins sustained] could be caused by a fall," and the witness answered, "That's possible, yes." Smith's attorney used this information in his closing argument. Referring to the twenty-foot cliff and to "some rocks [below] that had blood on [them]," he argued that Collins had died by accidentally falling over the cliff. Assuming the trial court's decision to sustain the State's objection was erroneous, it was harmless beyond a reasonable doubt because Smith's attorney elicited from the pathologist the information he sought: that Collins's injuries could have been caused by a fall. See Gaskins v. McKellar, 916 F.2d 941, 950 (4th Cir.1990).
 
 V.
 
 44
 In conclusion, we affirm the district court's grant of habeas relief because the North Carolina Supreme Court on direct appeal did not cure the unconstitutionally vague sentencing instruction on the aggravating factor relating to an "especially heinous, atrocious or cruel" murder. We also affirm the district court's rejection of Smith's other claims for relief.
 
 
 45
 AFFIRMED.
 
 
 46
 WILKINS, Circuit Judge, concurring in part and dissenting in part:
 
 
 47
 I concur in Part IV of the majority opinion, which holds that all of the issues raised by Smith in his cross-appeal lack merit. However, because Smith is not entitled to federal habeas relief, I would reverse the decision of the district court. Smith procedurally defaulted his claim that the jury was instructed to weigh an unconstitutionally vague aggravating factor in deciding to sentence him to death (his "heinousness claim"). And, Smith cannot demonstrate cause and prejudice or actual innocence to excuse his procedural default; consequently, federal habeas review of this issue is barred. Furthermore, even if it were appropriate for this court to reach the merits of Smith's heinousness claim, I would find that this court may appropriately conduct harmless error analysis and that the error was harmless.
 
 I. Procedural Background
 
 48
 In order to fully appreciate application of the procedural bar principles discussed below, a brief recitation of the procedural history is helpful. After direct review of Smith's conviction and sentence by the Supreme Court of North Carolina was concluded, Smith filed his first application for post-conviction relief, a Motion for Appropriate Relief, with the Superior Court of Halifax County, North Carolina. Smith's Motion for Appropriate Relief raised 57 separate grounds for relief, which were divided into five "Claims." Claims I through IV raised issues relating to various pretrial rulings by the state trial court, jury selection, and alleged errors occurring during the guilt and sentencing phases of Smith's trial, including the heinousness claim. His remaining grounds for relief, set forth in Claim V, were allegations of ineffective assistance of counsel.
 
 
 49
 Without conducting a hearing or requesting a response from the State, the superior court entered a short summary order denying without discussion the 42 grounds for relief presented in Smith's Claims I through IV. The superior court directed the State to respond to Claim V and ordered an evidentiary hearing on it. After conducting this hearing, the superior court denied Smith's allegations of ineffective assistance of counsel in an exhaustive 33-page order containing detailed findings of fact and conclusions of law. The Supreme Court of North Carolina subsequently denied Smith's petition for certiorari.
 
 
 50
 Smith petitioned the United States District Court for the Eastern District of North Carolina for relief pursuant to 28 U.S.C.A. § 2254 (West 1977).[1] The district court concluded that none of the grounds for relief raised in Smith's petition was procedurally defaulted because the superior court, in denying Claims I through IV of Smith's Motion for Appropriate Relief, had not included a plain statement that it was basing its decision on an independent and adequate state ground. Reaching the merits of the grounds for relief asserted by Smith's petition, the district court determined that each of the issues he raised lacked merit, except for his heinousness claim. With respect to this latter issue, the district court concluded that Smith's sentencing jury had been instructed to weigh an unconstitutionally vague aggravating factor during the penalty phase of his trial. Although the district court stated that it "would not hesitate" to conclude that the facts surrounding Smith's crime satisfied the constitutionally limited construction of the "heinous, atrocious, or cruel" aggravating factor adopted by the Supreme Court of North Carolina, it determined that it lacked authority to review the error for harmlessness. See Smith v. Dixon, 766 F.Supp. 1370, 1386 n. 7 (E.D.N.C.1991). Consequently, it concluded that the writ must issue unless the Supreme Court of North Carolina cured the error. The Supreme Court of North Carolina thereafter denied a request by the State for clarification of its earlier opinion that rejected the issues raised in Smith's direct appeal, holding that it lacked jurisdiction to do so. State v. Smith, 330 N.C. 617, 412 S.E.2d 68 (1991) ("Believing that this Court has already fully addressed all the issues it can properly address within the limits of its appellate jurisdiction, the petition of the State is denied...."). The district court then ordered its decision into effect.
 
 
 51
 Both Smith and the State appeal. The State maintains that because the district court did not have the benefit of the decision of the Supreme Court in Coleman v. Thompson, --- U.S. ----, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), it erred in finding that Smith's heinousness claim was not procedurally defaulted. The State contends that a proper application of procedural bar principles, as elucidated in Coleman, leads to the conclusion that the grounds for relief raised in Smith's federal habeas petition, except for his allegations of ineffective assistance of counsel, are procedurally barred. Smith, on the other hand, argues that the district court properly determined that the allegations of error raised in his federal habeas petition are not procedurally barred and that the district court properly granted him relief based on his heinousness claim.
 
 
 52
 The majority agrees with the district court that none of the issues raised in Smith's petition are procedurally defaulted, albeit on different reasoning. In addition, it agrees that Smith is entitled to relief based on his heinousness claim, but that the remainder of the issues raised in Smith's appeal lack merit. Although I agree with the majority that the issues raised in Smith's cross-appeal lack merit, I conclude that Smith's heinousness claim is procedurally defaulted.[2] Further, even if it were proper for this court to address the merits of the heinousness claim, I would reverse the decision of the district court because federal habeas courts may review this error for harmlessness and the error was, in Smith's case, harmless.
 
 II. Procedural Default
 A.
 
 53
 Because ambiguous state court decisions make it difficult for federal courts reviewing petitions pursuant to 28 U.S.C.A. § 2254 to assess whether a state court based its decision on an independent and adequate state ground, the Supreme Court, in Harris v. Reed, 489 U.S. 255, 261-63, 109 S.Ct. 1038, 1042-43, 103 L.Ed.2d 308 (1989), established a conclusive presumption to assist federal courts in making this determination. The Harris Court held that "if 'it fairly appears that the state court rested its decision primarily on federal law,' " federal habeas courts must conclusively presume that a state decision does not rest on an independent and adequate state ground, "unless the state court's opinion contains a ' "plain statement" that [its] decision rests upon adequate and independent state grounds.' " Id. at 261, 109 S.Ct. at 1042 (alteration in original) (quoting Michigan v. Long, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983)). Two years later, in Coleman v. Thompson, the Court rejected the argument that the Harris presumption applies unless the last state court reviewing federal claims included a clear statement that its decision rested on independent and adequate state procedural grounds, Coleman, --- U.S. at ----, 111 S.Ct. at 2557, noting that "[a] broad presumption would [place] too great a burden on the state courts," id. at ----, 111 S.Ct. at 2559. The Court sought to explain its rejection of this argument by focusing on the justification for the Harris presumption. Id. --- U.S. at ----, 111 S.Ct. at 2558-59. The Court stressed that "[t]he [Harris ] presumption, like all conclusive presumptions, is designed to avoid the costs of excessive inquiry where a per se rule will achieve the correct result in almost all cases." Id. --- U.S. at ----, 111 S.Ct. at 2558. The Court went on to state, "Per se rules should not be applied ... in situations where the generalization is incorrect as an empirical matter; the justification for a conclusive presumption disappears when application of the presumption will not reach the correct result most of the time." Id. Emphasizing that it is primarily concerns of comity and federalism "that underlie[ ] the application of the independent and adequate state ground doctrine in federal habeas," the Court concluded that the Harris "presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law." Id. --- U.S. at ----, 111 S.Ct. at 2559.
 
 
 54
 The Coleman Court then stated that the Harris presumption did not apply to the ambiguous Virginia state-court order under scrutiny, explaining that the order fairly appeared to rest on a state procedural bar. Id. It based this conclusion on the fact that the state court "dismissed" rather than "denied" the action and on the surrounding circumstances, particularly the fact that the state had based its motion to dismiss on a state procedural bar. Id.; see Ylst v. Nunnemaker, --- U.S. ----, ----, 111 S.Ct. 2590, 2594 (1991) (noting reliance by the Coleman Court on surrounding circumstances in determining the applicability of the Harris presumption). The Court, however, has recognized that "such clues will not always, or even ordinarily, be available" for federal courts attempting to decide whether a state decision rests on an independent and adequate state ground. Ylst, --- U.S. at ----, 111 S.Ct. at 2594. With these controlling principles in mind, an examination of the position taken by the majority demonstrates why it is incorrect. While the same "clues" in Coleman are not present here, another of equal persuasion is.B.
 
 
 55
 The majority correctly concludes that, as a threshold matter, this court must determine whether it is appropriate for a federal habeas court to review Smith's heinousness claim or whether Smith procedurally defaulted it. In addition, the majority recognizes that federal habeas courts generally "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, --- U.S. at ----, 111 S.Ct. at 2553-54. The majority, however, incorrectly concludes that the circumstances surrounding the ambiguous state summary order of the superior court, denying Claims I through IV of Smith's Motion for Appropriate Relief (including his heinousness claim), do not demonstrate that the superior court based its decision on a state procedural ground. It maintains that the dissimilar treatment accorded Claims I through IV as compared with that afforded Claim V does not illuminate whether the superior court based its decision on the merits or on N.C.Gen.Stat. § 15A-1419(a) (Michie 1988). The majority fails to recognize the significance of this divergent treatment because it labors under the misapprehension that not all of the issues presented in Claims I through IV were subject to summary denial under § 15A-1419(a). Further, it loses sight of the issue before us, focusing instead on an issue that is irrelevant to a determination of the basis for the decision of the superior court. Consequently, it concludes that Nickerson v. Lee, 971 F.2d 1125 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), is controlling.
 
 
 56
 In my view, the summary order of the superior court adjudicating Claims I through IV of Smith's Motion for Appropriate Relief does not fairly appear to rest on federal law or to be interwoven with federal law. First, all of the issues raised by Smith in Claims I through IV, including the heinousness claim, were eligible for summary denial under § 15A-1419(a). Second, the issues raised in Claim V, alleging ineffective assistance of counsel, were not subject to summary denial under § 15A-1419(a). Third, the difference in treatment that the superior court afforded these two sets of claims is of compelling significance. Fourth, the prior decision of this court in Nickerson does not dictate a result different from the one that I believe to be correct.
 
 1.
 
 57
 Under North Carolina law collateral challenges to criminal convictions are raised in a motion for appropriate relief. See N.C.Gen.Stat. § 15A-1415 (Michie 1988). Certain issues presented to a North Carolina superior court in a motion for appropriate relief may be summarily denied pursuant to § 15A-1419(a), which provides in pertinent part:
 
 
 58
 The following are grounds for the denial of a motion for appropriate relief:
 
 
 59
 ....
 
 
 60
 (2) The ground or issue underlying the motion was previously determined on the merits upon an appeal from the judgment....
 
 
 61
 (3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.
 
 
 62
 N.C.Gen.Stat. § 15A-1419(a). Thus, § 15A-1419(a) permits a superior court ruling on a motion for appropriate relief to summarily deny grounds for relief that were previously ruled on by the Supreme Court of North Carolina in the petitioner's direct appeal or that the petitioner could have raised but failed to raise in his direct appeal.
 
 
 63
 The majority apparently concedes that all but one of the 42 issues raised in Claims I through IV of Smith's Motion for Appropriate Relief were subject to summary denial pursuant to § 15A-1419(a). It maintains, however, that Smith's challenge to the constitutional adequacy of the appellate review scheme for North Carolina capital cases, raised in Claim IV, was not eligible for summary disposition under § 15A-1419(a) and, therefore, must have been decided on the merits. It implies that because this issue was not eligible for denial on a procedural ground, and was adjudicated by the summary order, it is likely that all of the issues adjudicated by the summary order were similarly treated.
 
 
 64
 Notably absent from the discussion of the majority is any reasoning supporting such a position or citation to authority for the proposition that this issue could not properly have been raised by Smith in his direct appeal. This omission is understandable because the Supreme Court of North Carolina has on direct review repeatedly entertained various challenges to the constitutionality of N.C.Gen.Stat. § 15A-2000 (Michie 1988), which sets forth the North Carolina scheme for appellate review of capital felonies, without intimating that such a challenge is available only on collateral review. See, e.g., State v. Brown, 315 N.C. 40, 337 S.E.2d 808, 823 (1985) (entertaining and rejecting arguments on direct appeal that the statute establishing proportionality review violates due process guarantees of the Fourteenth Amendment and unconstitutionally expands jurisdiction of the appellate court), cert. denied, 476 U.S. 1165, 106 S.Ct. 2293, 90 L.Ed.2d 733 (1986), overruled in part on other grounds by State v. Vandiver, 321 N.C. 570, 364 S.E.2d 373 (1988); State v. Williams, 304 N.C. 394, 284 S.E.2d 437, 448 (1981), cert. denied, 456 U.S. 932, 102 S.Ct. 1985, 72 L.Ed.2d 450 (1982).[3] Thus, all of the grounds for relief raised by Smith in Claims I through IV, including his challenge to the constitutionality of the North Carolina appellate review scheme, were subject to summary denial pursuant to § 15A-1419(a). The conclusion of the majority is driven by a false premise, a circumstance that will inevitably produce an incorrect result.
 
 
 65
 Next, the majority notes that some of the issues Smith raised in Claims I through IV had been rejected on the merits by the Supreme Court of North Carolina on direct appeal. Its argument continues that accordingly these issues were not "procedurally barred," in the sense that federal habeas review is not foreclosed, because they were either denied under § 15A-1419(a)(2) (because they had been previously adjudicated on the merits by the Supreme Court of North Carolina on direct appeal) or were decided on the merits by the superior court.
 
 
 66
 But, this reasoning is irrelevant to disposition of whether the heinousness claim is procedurally barred.
 
 
 67
 The critical question before us is whether the superior court reached and decided the merits of Smith's heinousness claim. The parties do not dispute that Smith did not raise this claim in his direct appeal to the Supreme Court of North Carolina. Therefore, to the extent that the superior court based its denial of Smith's heinousness claim on § 15A-1419(a), it must have relied on subsection (3), permitting superior courts to deny motions for appropriate relief based on grounds for relief that could have been raised on direct appeal but that were not. The question pursued by the majority--whether some of Smith's other issues that the superior court may have denied under subsection (2) of § 15A-1419(a), because the Supreme Court of North Carolina previously decided them in Smith's direct appeal, properly may be reviewed by a federal habeas court--is an interesting one, but resolution of it is irrelevant here because it addresses a different subsection of the statute and one that does not, and indeed cannot, apply to the heinousness claim.[4]
 
 
 68
 To illustrate my point, assume that the position of the majority is correct and that issues raised on direct appeal and subsequently denied in a motion for appropriate relief pursuant to subsection (2) may be considered by a federal habeas court. Because Smith did not raise his heinousness claim on direct appeal, he would not benefit from the assumption. Moreover, in order to reach the question of whether issues raised on direct appeal and denied pursuant to subsection (2), when presented in Smith's Claims I through IV, may be reviewed by a federal habeas court, we would have to assume that the superior court in fact based its summary denial of Claims I through IV on some subsection of § 15A-1419(a). Such an assumption would establish that Smith's heinousness claim, which under this scenario would have had to have been denied under subsection (3), is defaulted because there is no dispute that a disposition pursuant to subsection (3) is not a decision on the merits. Cf. Felton v. Barnett, 912 F.2d 92, 95-96 (4th Cir.1990) (finding petitioner's grounds for relief procedurally barred by independent and adequate state ground doctrine when a North Carolina superior court relied in part on § 15A-1419(a)(3)), cert. denied, 498 U.S. 1032, 111 S.Ct. 693, 112 L.Ed.2d 683 (1991). Thus, whether grounds for relief raised on direct appeal, but subsequently summarily denied on collateral review pursuant to subsection (2) may be reviewed by a federal habeas court is inconsequential to the question before us.[5]2.
 
 
 69
 Having concluded that all of the issues raised in Smith's Claims I through IV were subject to summary disposition pursuant to § 15A-1419(a), I now examine the issues raised in Claim V and how they differ from those raised in Claims I through IV. Each of the grounds for relief presented in Claim V alleged ineffective assistance of counsel at various stages of Smith's proceedings. Allegations of ineffective assistance of counsel are generally not properly raised on direct appeal because of the necessity of an evidentiary hearing to determine whether counsel's assistance was ineffective and, if so, whether the defendant was prejudiced as a result. See State v. Dockery, 78 N.C.App. 190, 336 S.E.2d 719, 721 (N.C.Ct.App.1985) (noting that although there are exceptions, "[t]he accepted practice is to raise claims of ineffective assistance of counsel in post-conviction proceedings, rather than direct appeal," due to the need for evidentiary development of these claims); State v. Vickers, 306 N.C. 90, 291 S.E.2d 599, 603 (1982); cf. State v. Kinch, 314 N.C. 99, 331 S.E.2d 665, 669 (1985). Accordingly, allegations of ineffective assistance usually would not be subject to summary denial under § 15A-1419(a). See N.C.Gen.Stat. § 15A-1419 official commentary. Here, there is no dispute that the issues raised in Claim V (ineffective assistance of counsel) were not subject to summary denial pursuant to § 15A-1419(a), but were decided on the merits.
 
 3.
 
 70
 The difference in treatment that the superior court afforded the ineffective assistance of counsel issues raised in Claim V, in contrast to the summary denial of Smith's Claims I through IV, provides a compelling "clue" to determining whether the superior court based its summary order on federal or state law. Without requesting a response from the State and without conducting a hearing on Smith's motion, the superior court entered a summary order denying in three sentences the 42 grounds for relief presented in Smith's Claims I through IV.[6] In sharp contrast, the superior court directed the State to respond and ordered an evidentiary hearing on Claim V. After conducting this hearing, the superior court issued a 33-page order. This order, denying relief on Claim V, contained 23 pages of detailed factual findings and thoroughly addressed Smith's allegations of ineffective assistance of counsel in the investigatory, preparatory, trial, and appellate stages of the state proceedings.
 
 
 71
 It is not enough, of course, that Claims I through IV were eligible for summary denial; the superior court must in fact have relied on § 15A-1419(a) in denying Claims I through IV for federal habeas review to be foreclosed due to procedural default. See Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985). In my view, the profound difference in the treatment that the superior court accorded the issues raised in Smith's Claim V, which were not subject to summary denial, vis-a-vis those raised in Claims I through IV, which were subject to summary denial, compels the conclusion that the superior court actually relied on § 15A-1419(a) in summarily denying Smith's Claims I through IV (including his heinousness claim).[7] Indeed, nothing other than reliance on § 15A-1419(a) reasonably can account for this disparate treatment. Therefore, viewing the summary order in the light of the surrounding circumstances, I conclude that it was based on § 15A-1419(a).
 
 4.
 
 72
 Finally, our opinion in Nickerson v. Lee, 971 F.2d 1125 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), does not dictate a contrary result. Concededly, as the majority has recognized, there are a number of similarities between the facts presented here and those under consideration in Nickerson. However, Nickerson does not control this case because it is distinguishable in one conclusive respect.
 
 
 73
 The Nickerson court reviewed an order of a North Carolina superior court denying a motion for appropriate relief that contained language virtually identical in significant respects to the summary order denying Smith's Claims I through IV. See id. at 1128. The court concluded that this language implied that the state "court reached and reviewed the merits of" the issues raised. Id. at 1129. The Nickerson court, however, was careful to distinguish Coleman and other cases[8] that had decided, based on surrounding circumstances, that ambiguous state orders fairly appeared to rest on state, rather than federal, law. Id. 971 F.2d at 1129 & n. 5. Determining that none of the circumstances surrounding entry of the order at issue indicated that the state court had based its decision on the state procedural rule, see id. at 1129, the Nickerson court concluded that the judgment of the state court "did not rest upon an independent and adequate state ground," id. at 1130.
 
 
 74
 Although many of the same circumstances present in Nickerson also exist here, one key fact distinguishes it from the case at bar. The Nickerson court clearly did not have the occasion to address a situation in which the surrounding circumstances do indicate that the summary order of the superior court was based on a state procedural ground.[9] Indeed, the Nickerson court specifically distinguished the situation presented to it from that presented to other courts in which ambiguous state orders fairly appeared to rest on state grounds when viewed in the light of the surrounding circumstances. Id. at 1129 & n. 5. Here, as opposed to Nickerson, the summary disposition made of Claims I through IV compared to the exhaustive, on the merits, review given to Claim V demonstrates a difference that compels a different conclusion.
 
 
 75
 Also, as in Nickerson, concededly some of the same factors upon which the Supreme Court relied in Coleman to conclude that the Virginia order was based on a state procedural ground are not present here. In reaching its decision, the Coleman Court relied on the fact that the state-court order had been dismissed rather than denied and that the State had argued the procedural ground in its motion to dismiss. However, the absence of these same factors does not indicate that the order now under review fairly appears to rest on federal grounds. There could be many factors surrounding entry of a state order that would convince a federal habeas court that the state order does not fairly appear to rest on federal grounds or that it does rest on state grounds; the absence of the ones that happened to be present in Coleman has no particular significance, for the Court was deciding that case based on the factors present there.
 
 
 76
 For example, although the superior court "denied" rather than "dismissed" Claims I through IV of Smith's Motion for Appropriate Relief, this fact does not indicate that the superior court reached the merits of these issues and based its decision on federal grounds. North Carolina law provides for denial--rather than dismissal--of motions for appropriate relief presenting grounds that either were decided on direct appeal or grounds that could have been, but were not, raised earlier. See N.C.Gen.Stat. § 15A-1419(a) ("The following are grounds for the denial of a motion for appropriate relief...."). Therefore, a "denial" of Smith's motion was equally compatible with a denial on the merits or a denial pursuant to § 15A-1419(a). Additionally, North Carolina post-conviction procedure does not impose a specific time limit for responding to a motion for appropriate relief. See N.C.Gen.Stat. § 15A-1420 (Michie 1988). Because the superior court issued its summary order denying Claims I through IV of Smith's Motion for Appropriate Relief before the State responded, there are no pleadings to which we can look to assist in determining the grounds upon which the summary order was adjudicated. Therefore, these factors are merely neutral.
 
 
 77
 In sum, I believe that the majority errs in concluding that the circumstances surrounding the denial of Claims I through IV of Smith's Motion for Appropriate Relief do not indicate that the summary order of the superior court was based on a state procedural ground. The fact that each of the issues Smith raised in Claims I through IV were subject to summary disposition pursuant to § 15A-1419(a) and in fact received summary disposition, while issues raised in Claim V, which were not eligible for summary treatment under § 15A-1419(a), received exhaustive review, indicates, conclusively to my mind, that the superior court based its summary denial of Claims I through IV on § 15A-1419(a).
 
 C.
 
 78
 In order for a state procedural ground, such as § 15A-1419(a), to provide an adequate basis for decision, thereby foreclosing federal habeas review of an issue, the state procedural bar must be applied "consistently or regularly." Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). Smith argues that the North Carolina courts do not apply the procedural bar contained in § 15A-1419(a) "consistently or regularly," Johnson, 486 U.S. at 587, 108 S.Ct. at 1987, to capital cases. Consequently, he asserts, this state procedural ground is not adequate to support a conclusion that federal habeas review of the issues Smith raised in Claims I through IV is procedurally barred.
 
 
 79
 As support for his contention that § 15A-1419(a) is not regularly or consistently applied in North Carolina capital cases, Smith first asserts that the Supreme Court of North Carolina, on direct review of capital appeals, has reached the merits of issues that had been procedurally defaulted. See, e.g., State v. McCoy, 236 N.C. 121, 71 S.E.2d 921, 922 (1952) (indicating on direct review of capital cases court will examine the record ex mero motu for reversible error). These direct review cases, however, do not sustain Smith's contention that North Carolina courts do not apply the procedural bar contained in § 15A-1419(a), which applies on collateral review. On the contrary, because the Supreme Court of North Carolina has previously examined the entire record of the capital case for error on direct review, including error that was not properly preserved, there is no reason to believe that a court reviewing a motion for appropriate relief would find it beneficial, except in the most exceptional circumstances, not to rely on § 15A-1419(a) on collateral review.[10]
 
 
 80
 Noting that N.C.Gen.Stat. § 15A-1419(b)[11] creates an exception to the general rule set forth in § 15A-1419(a), Smith next contends that the existence of this exception indicates that § 15A-1419(a) is not adequate to foreclose federal habeas review. This argument lacks merit. As we have previously recognized, "consistent or regular application of a state's procedural default rules does not mean undeviating adherence to such rule admitting of no exception." Meadows v. Legursky, 904 F.2d 903, 907 (4th Cir.) (en banc), cert. denied, 498 U.S. 986, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990); see also Wise v. Williams, 982 F.2d 142, 143-44 (4th Cir.1992). Therefore, the existence of an exception does not signify that a state procedural rule is not applied consistently and regularly. Quite the contrary, that there is a necessity for occasional exceptions to be made is evidence that the state rule is consistently and regularly enforced. See Wise, 982 F.2d at 143-44. Because Smith has failed to demonstrate that the procedural bar contained in § 15A-1419(a) is not consistently and regularly applied by the North Carolina courts, see Sochor v. Florida, --- U.S. ----, ----, 112 S.Ct. 2114, 2120, 119 L.Ed.2d 326 (1992), I conclude that it is adequate to support the state-court judgment.[12]
 
 D.
 
 81
 Smith maintains that even if this court finds that he procedurally defaulted his heinousness claim we should nevertheless review it because he can demonstrate an excuse justifying relief from the procedural bar. As the Supreme Court has recently stated:
 
 
 82
 In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.
 
 
 83
 Coleman, --- U.S. at ----, 111 S.Ct. at 2565. Smith maintains that he can demonstrate cause for the procedural default of his heinousness claim and actual prejudice resulting therefrom. He bases his cause-and-prejudice argument on his appellate attorney's ineffectiveness in failing to raise the heinousness claim on direct appeal to the Supreme Court of North Carolina. In addition, he contends that our refusal to consider his procedurally defaulted heinousness claim will result in a miscarriage of justice. These contentions lack merit.
 
 
 84
 An attorney's ineffectiveness may constitute cause for excusing a procedural default when a petitioner has a constitutional right to effective assistance of counsel and when that assistance is " 'constitutionally ineffective under the standard established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).' " Coleman, --- U.S. at ----, 111 S.Ct. at 2566 (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Smith has a constitutionally protected right to effective assistance of counsel on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 395, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985). So, Smith may demonstrate cause based on ineffective assistance of counsel by establishing that his attorney's representation fell below an objective standard of reasonableness and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-94, 104 S.Ct. at 2064-68.
 
 
 85
 In addressing whether Smith's appellate counsel was ineffective in failing to raise the heinousness claim in his direct appeal to the Supreme Court of North Carolina, the majority states:[13]
 
 
 86
 Even if we were to assume that counsel's failure to raise th[is] claim[ ] on direct appeal violated the first prong of the Strickland test by being unreasonable, Smith clearly has not met the second requirement of Strickland: there is not a reasonable probability that the result in Smith's case would have been different had his attorney raised th[is] claim.
 
 
 87
 At 679. I agree. In my view, it is unlikely that Smith could carry his burden of showing that counsel's performance was ineffective in view of the presumptively correct factual finding by the state court, see 28 U.S.C.A. § 2254(d), that Smith's appellate counsel diligently researched the law and chose to present those grounds on which he believed Smith had the best chance of prevailing. In any event, assuming that Smith could demonstrate that his appellate counsel's failure to raise the heinousness claim on direct appeal fell below the standard of reasonableness, Smith fails to carry his burden to show prejudice. The facts underlying Smith's conviction and sentence are such that Smith is unable to demonstrate a probability sufficient to undermine my confidence, or that of the majority, that the result of the proceeding would have been different.
 
 
 88
 Smith cannot demonstrate that his attorney was constitutionally ineffective in failing to raise the heinousness claim on direct appeal. Therefore, he cannot demonstrate cause to excuse his procedural default. Moreover, for all of the same reasons fully set forth in Section III.B. of this dissent, addressing harmless error, Smith is unable to show actual prejudice as a result of his attorney's failure to raise the heinousness claim on direct appeal.
 
 
 89
 Smith also maintains that the refusal to consider his procedurally defaulted grounds will result in a miscarriage of justice. In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, Smith must show actual innocence. See Sawyer v. Whitley, --- U.S. ----, ----, 112 S.Ct. 2514, 2517-18, 120 L.Ed.2d 269 (1992). In the context of the death penalty, a defendant "must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under the applicable state law." Id. at ----, 112 S.Ct. at 2517. Smith remained eligible for the death penalty based on three other aggravating factors--that Smith murdered Whelette while in the process of kidnapping, robbing, and raping her--absent the heinousness factor. See id. at ----, 112 S.Ct. at 2523-24. Additionally, Smith cannot "prove by clear and convincing evidence that no reasonable juror would find him eligible for the death penalty" had it been properly instructed under the constitutionally limited construction of the heinousness factor adopted by the Supreme Court of North Carolina. Jones v. Murray, 976 F.2d 169, 173 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 27, 120 L.Ed.2d 951 (1992). Consequently, he has not shown a miscarriage of justice.
 
 III. Harmless Error
 
 90
 The majority concludes that Smith's sentencing hearing was tainted with constitutional error and that the Supreme Court of North Carolina did not cure this error by reweighing the aggravating and mitigating circumstances under a proper standard or by conducting harmless error analysis. It then holds that Smith's death sentence must be set aside because it agrees with the district court that federal habeas courts are not authorized to conduct harmless error analysis of this error. Although I believe that this court is foreclosed by principles of procedural bar from reviewing Smith's contention that the jury that sentenced him to death was told to weigh an unconstitutionally vague aggravating factor in deciding whether to impose the death penalty, in my view, Smith is not entitled to relief even if the court could properly reach the merits of this issue. I conclude that federal courts considering a petition pursuant to 28 U.S.C.A. § 2254 properly may--indeed must--review this error for harmlessness. Moreover, the error occasioned by the unconstitutionally vague heinousness instruction to the jury that sentenced Smith was harmless.
 
 A.
 
 91
 Some types of constitutional error pervade the entire proceedings. See Satterwhite v. Texas, 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988). Assessment of the impact of these errors is impossible and reversal is automatic. Id. at 256-57, 108 S.Ct. at 1797. On the other hand, the principle that "not all constitutional violations amount to reversible error" is firmly established. Id. at 256, 108 S.Ct. at 1797. Since the landmark decision in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court "has applied harmless error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless." Arizona v. Fulminante, --- U.S. ----, ----, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991). This "rule 'promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.' " Satterwhite, 486 U.S. at 256, 108 S.Ct. at 1797 (quoting Rose v. Clark, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986)).
 
 
 92
 In reaching its conclusion that federal habeas courts may not apply harmless error analysis to Smith's heinousness claim, the majority disregards the admonition of the Supreme Court that federal habeas relief is an extreme remedy that must not be granted unless a petitioner can demonstrate that the error on which his claim for relief is based resulted in actual prejudice. In addition, the majority ignores the analysis generally employed by the Supreme Court to determine the propriety of applying harmless error analysis and carves out this single type of error--an unconstitutionally vague instruction on an aggravating factor--for a special approach heretofore not utilized by the Supreme Court. Ironically, the majority finds its result compelled by language used by the Supreme Court to indicate that a sentence infected by this type of error may be upheld if the error is harmless.
 
 1.
 
 93
 Although the Supreme Court has never expressly ruled that federal habeas courts may conduct a harmless error analysis of the particular error at issue here, it follows from the prior decisions of the Court that this review is proper. The Court has expressly approved of federal habeas courts conducting harmless error analysis, see, e.g., Rose, 478 U.S. at 584, 106 S.Ct. at 3109 (directing Court of Appeals for the Sixth Circuit to conduct harmless error review of an erroneous malice instruction on remand), and has held that harmless error analysis may be applied to errors occurring in capital proceedings, see, e.g., Satterwhite, 486 U.S. at 256-58, 108 S.Ct. at 1797-98 (approving harmless error analysis of admission in capital sentencing proceeding of psychiatric testimony obtained in violation of Sixth Amendment). Furthermore, the Court has acknowledged that federal habeas courts may, in appropriate circumstances, apply harmless error analysis to constitutional errors in state capital proceedings. See Cabana v. Bullock, 474 U.S. 376, 391 n. 6, 106 S.Ct. 689, 699, n. 6, 88 L.Ed.2d 704 (1986). In its most recent decision addressing the application of harmless error analysis to constitutional errors raised in habeas, the Court stated unequivocally that habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " Brecht v. Abrahamson, --- U.S. ----, ----, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting United States v. Lane, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986)). Moreover, action taken by the Supreme Court following its Brecht decision indicates that it intends that a federal habeas court, addressing error occasioned by jury consideration of an invalid aggravating factor at capital sentencing, must not grant relief unless it determines that the error was not harmless under the standard established in Brecht. See Singletary v. Duest, --- U.S. ----, 113 S.Ct. 1940, 123 L.Ed.2d 647 (1993) (vacating for reconsideration in light of Brecht an Eleventh Circuit decision granting habeas relief which concluded that the error occasioned by jury consideration of an invalid aggravating factor in a capital sentencing proceeding was not harmless beyond a reasonable doubt), vacating 967 F.2d 472 (11th Cir.1992). Thus, the Court has made plain that although a petitioner has demonstrated that his state trial was tainted with constitutional error, a federal habeas court generally must not grant habeas relief without first determining that the error " 'had substantial and injurious effect or influence in determining the jury's verdict' " when the error asserted is one that may be reviewed for harmlessness. Brecht, --- U.S. at ----, 113 S.Ct. at 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).
 
 
 94
 The Supreme Court has never drawn the distinction the majority seeks to create between federal and state court review in assessing the propriety of harmless error analysis. Instead, in evaluating whether review for harmless error could appropriately be conducted, the Court has consistently focused on the type of error that was committed and whether that error is one the impact of which may be determined by a reviewing court. See, e.g., Fulminante, --- U.S. at ---- - ----, 111 S.Ct. at 1263-66 (collecting cases and holding that "trial errors" may be assessed for harmlessness, while those errors that constitute a "structural defect affecting the framework within which the trial proceeds" may not); Rose, 478 U.S. at 579, 106 S.Ct. at 3106 ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."). And, the Court has previously stated that the error occasioned by the weighing of an unconstitutionally vague aggravating factor by the state sentencing body in deciding to sentence a defendant to death is a type of constitutional error susceptible of evaluation for harmlessness. See, e.g., Clemons v. Mississippi, 494 U.S. 738, 752, 110 S.Ct. 1441, 1450, 108 L.Ed.2d 725 (1990).
 
 
 95
 Moreover, this court is qualified to judge the effect that an unconstitutionally vague instruction on an aggravating factor had on the trial. This is precisely the analysis we are required to conduct in assessing whether Smith was prejudiced by his counsel's allegedly ineffective assistance in failing to raise the heinousness claim on direct appeal. In addition, harmless error analysis is essentially the same analysis we are required to perform in order to decide whether Smith has shown actual prejudice to excuse his procedural default of the heinousness claim. Harmless error analysis, as with each of these other analyses, requires a federal habeas court to review the cold record and draw a legal conclusion concerning the probable impact the error had in the context of the trial as a whole. See Brecht, --- U.S. at ----, 113 S.Ct. at 1722. It seems illogical to hold, on the one hand, that we are able to assess the effect of the error for purposes of deciding prejudice under Strickland, or for purposes of determining actual prejudice to excuse Smith's procedural default, but find that we are unable to evaluate the effect of this error in determining prejudice for purposes of harmless error analysis.
 
 
 96
 Thus, support for my conclusion that federal habeas courts have the authority to review Smith's heinousness claim for harmlessness is fourfold. First, the Supreme Court has specifically approved of federal habeas courts conducting harmless error analysis in habeas, even in the context of errors occurring in capital sentencing; indeed, federal habeas courts must not grant habeas relief from state convictions or sentences based on trial error unless the petitioner can demonstrate that the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht, --- U.S. at ----, 113 S.Ct. at 1722 (quoting Kotteakos, 328 U.S. at 776, 66 S.Ct. at 1253). Second, the Court has always analyzed the propriety of applying harmless error analysis based upon the type of error at issue, not on the particular court that may conduct the analysis. Third, in characterizing the error presented in Smith's heinousness claim as the type that may be assessed for harmlessness, the Court has acknowledged that this type of error is a "trial error." And, fourth, this court must be qualified to assess the prejudicial impact of an unconstitutionally vague instruction on an aggravating factor because we are already required to conduct this same evaluation in the context of determining prejudice under Strickland and actual prejudice in deciding whether to excuse Smith's procedural default of his heinousness claim. In addition, concerns of comity and federalism weigh in favor concluding that federal habeas courts are authorized to conduct harmless error analysis of the error at issue here. As stressed by the Brecht Court, " 'Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.' " See Brecht, --- U.S. at ----, 113 S.Ct. at 1720 (quoting Engle v. Isaac, 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982)). Thus, before overturning final and presumptively correct state convictions or sentences on habeas review, federal courts must assess for harmlessness those errors eligible for this review in order to assure that the extraordinary relief provided by the writ is granted only to those " 'persons whom society has grievously wronged.' " Brecht, --- U.S. at ----, 113 S.Ct. at 1719 (quoting Fay v. Noia, 372 U.S. 391, 441, 83 S.Ct. 822, 850, 9 L.Ed.2d 837 (1963)).
 
 2.
 
 97
 The arguments advanced by the majority to the contrary are unconvincing. It first relies on language in Supreme Court opinions addressing the constitutionality of instructions on aggravating factors similar to those given to the jury that sentenced Smith and discussing whether death sentences returned based on those instructions could be upheld. Careful examination of these opinions, however, discloses that they do not sustain the conclusion the majority advances.
 
 
 98
 In assessing the meaning of the language on which the majority relies, one must keep in mind that none of the opinions containing this language were ones in which a lower federal court had conducted, or refused to conduct, harmless error review. Furthermore, careful scrutiny of these opinions reveals that the language upon which the majority relies does not indicate that the Court disapproves of federal habeas courts conducting harmless error analysis with respect to this error.
 
 
 99
 For example, in the first case relied on by the majority, Richmond v. Lewis, --- U.S. ----, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), the Court reversed a judgment of the Court of Appeals for the Ninth Circuit, which held that the petitioner's death sentence could be upheld despite the petitioner's challenge to an instruction directing his sentencing jury to consider an "especially heinous, cruel or depraved" aggravating factor, Ariz.Rev.Stat.Ann. § 13-703(F)(6) (1989). The Ninth Circuit had reasoned that the factor had been constitutionally narrowed, so there was no error. Richmond, at ----, 113 S.Ct. at 534. It further held that in any event the sentence could stand because Arizona was not a weighing state, so elimination of one factor, when sufficient other support for the sentence existed, did not require reversal. Id.
 
 
 100
 On review before the Supreme Court, the State did not contend that the aggravating factor had been constitutionally narrowed at the time of the petitioner's sentencing or that Arizona was not a weighing state. See id. Nor did it argue that the error was harmless. Id. at ----, 113 S.Ct. at 535. Instead, the State based its argument for upholding the sentence on the theory that in reviewing the sentence, a majority of the Supreme Court of Arizona had actually reweighed the mitigating and aggravating circumstances, thereby curing the constitutional error. See id. Finding that although it had "not specif[ied] the degree of clarity with which a state appellate court must reweigh in order to cure an otherwise invalid death sentence," the Court concluded that "[a]t a minimum," it must be able to "determine that the state court actually reweighed." Id. In this context, it repeated its prior statements that the only ways in which this error may be cured are by "constitutional harmless-error analysis" or by reweighing of the aggravating and mitigating circumstances at the state trial or appellate levels. See id. Expounding on this latter method of cure in the next sentence, the Court stated that "[w]here the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand." Id.
 
 
 101
 Reading these statements out of context, the majority contends that this passage indicates that only a state court may cure this error. However, the language cannot be read in this manner, for to do so would mean not only that state courts are the only courts that can cure the error, but also that reweighing, to the exclusion of harmless error analysis, is the only method for doing so. Harmless error analysis does not involve conducting a new sentencing calculus. Rather, it calls upon the reviewing court to draw a legal conclusion based on a review of the record. Therefore, such a reading of the passage flatly contradicts the sentence immediately preceding it, which approves of harmless error review as a cure. As I read this passage, the Court was attempting to illuminate how clear a state court must be in undertaking the reweighing process. The answer the Court sets forth is that the state court must demonstrate that it has actually undertaken a new sentencing calculus. Read with its more natural meaning, this passage provides no insight into whether federal habeas courts may conduct harmless error analysis of this error.
 
 
 102
 As another example, the majority seizes on Stringer v. Black, --- U.S. ----, ----, 112 S.Ct. 1130, 1140, 117 L.Ed.2d 367 (1992), as compelling its position. The Stringer Court stated that the "use of a vague ... aggravating factor in the weighing process invalidates the sentence and ... requires constitutional harmless-error analysis or reweighing in the state judicial system," if the sentence is to stand. Id. This language is at best ambiguous concerning whether harmless error analysis as well as reweighing must be conducted by the state judiciary. In view of the fact that the Court has never before drawn this distinction with respect to harmless error analysis, as opposed to factual determinations necessary to support the state judgment, cf. Cabana, 474 U.S. at 391 & n. 6, 106 S.Ct. at 699 & n. 6, I believe that the better reading of this passage is that "in the state judicial system" modifies only "reweighing"--just as "constitutional" modifies only "harmless-error analysis," see Stringer, --- U.S. at ----, 112 S.Ct. at 1140.
 
 
 103
 Similar scrutiny of the other cases on which the majority relies demonstrates that they do not support its position. In Sochor v. Florida, --- U.S. ----, ----, 112 S.Ct. 2114, 2123, 119 L.Ed.2d 326 (1992), the Court, on direct review from the Florida Supreme Court, was addressing whether the state appellate court had successfully cured the error occasioned by a trial judge's weighing of an unconstitutionally vague aggravating factor in deciding to sentence Sochor to death. It is not surprising that, in the context of direct review from state court, the Supreme Court framed its discussion in terms of explaining how "state court ... review for harmless federal error will pass federal scrutiny." Id. While this discussion recognizes that state courts may conduct harmless error analysis, it does not indicate that review of this error for harmlessness by federal habeas courts is improper. Because the posture of the remaining Supreme Court cases on which the majority relies is essentially the same as that presented in Sochor, they likewise cannot be viewed as addressing, even by negative implication, whether federal habeas courts may review this error for harmlessness. See Clemons v. Mississippi, 494 U.S. 738, 754, 110 S.Ct. 1441, 1451, 108 L.Ed.2d 725 (1990); Barclay v. Florida, 463 U.S. 939, 958, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983).
 
 
 104
 When the majority draws its conclusion that federal habeas courts should not conduct harmless error review of the heinousness claim in the first instance, it cites Lewis v. Jeffers for the proposition that the "weighing of factual evidence," in its view required by harmless error analysis, "concerns a question of state law, 'errors of which are not cognizable in federal habeas proceedings.' " At 677 (quoting Lewis v. Jeffers, 497 U.S. 764, 783, 110 S.Ct. 3092, 3103, 111 L.Ed.2d 606 (1990)). Again, as with all of the cases cited by the majority, Lewis v. Jeffers does not address whether federal habeas courts may properly review for harmlessness the error occasioned by the weighing of an unconstitutionally vague aggravating factor in determining whether to impose a sentence of death. The well-established proposition quoted by the majority--that violations of state law do not provide a basis for federal habeas relief--does not support its position that federal habeas courts cannot review for harmlessness an error of constitutional dimension. Neither Lewis v. Jeffers, nor any other authority relied on by the majority, supplies support for the proposition that harmless error analysis involves a weighing of factual evidence that this court is not authorized to conduct.
 
 
 105
 Harmless error analysis is a question of law that must necessarily be conducted on a cold record, whether the court be federal or state. See Fulminante, --- U.S. at ----, 111 S.Ct. at 1257; see also Yates v. Evatt, --- U.S. ----, ----, 111 S.Ct. 1884, 1895, 114 L.Ed.2d 432 (1991) ("[W]e have the authority to make our own assessment of the harmlessness of a constitutional error in the first instance."); United States v. Hastings, 461 U.S. 499, 510 & n. 8, 103 S.Ct. 1974, 1981 & n. 8, 76 L.Ed.2d 96 (1983) (noting that Court was in the same position to undertake the analysis as the court of appeals); Booker v. Dugger, 922 F.2d 633, 636 n. 4 (11th Cir.) ("Federal courts are not ... bound by state court rulings on harmless error."), cert. denied, --- U.S. ----, 112 S.Ct. 277, 116 L.Ed.2d 228 (1991).[14] And, federal habeas courts routinely conduct harmless error analysis of errors occurring in capital cases. See, e.g., Gaskins v. McKellar, 916 F.2d 941, 950-51 (4th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991); Waye v. Townley, 871 F.2d 18, 21 (4th Cir.), cert. denied, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 710 (1989). Such analysis invariably calls upon the court to make the same type of judgments that would be required in reviewing Smith's heinousness claim for harmlessness.
 
 
 106
 In addition, the type of judgment required to assess whether Smith was prejudiced by the jury instruction on the unconstitutionally vague heinousness factor is precisely the sort of evaluation the majority conducted in assessing whether Smith had demonstrated prejudice for purposes of Strickland. In addressing this issue, the majority was required to assess the likelihood that Smith was prejudiced as a result of the error. How is it that the majority finds this court incompetent to perform a harmless error analysis of the error occasioned by Smith's heinousness claim, but finds that it is competent to conduct essentially the same analysis in determining Smith's claim of ineffective assistance of counsel based on his attorney's failure to raise the heinousness claim on direct appeal?
 
 
 107
 Further, I cannot accept the position taken by the majority that an inference can be drawn that federal courts do not have the authority to conduct harmless error analysis from the fact that the Supreme Court has not specifically instructed a federal court of appeals to conduct such a review as a part of its remand instructions. Importantly, many of the cases on which the majority relies came to the Court on direct review from state courts, not federal ones. See, e.g., Sochor, --- U.S. ----, 112 S.Ct. 2114; Clemons, 494 U.S. 738, 110 S.Ct. 1441. In addition, while there is no question that state courts may conduct harmless error review, the Supreme Court has often remanded to these courts for "further proceedings" rather than providing the courts with specific instructions to conduct harmless error analysis. Clemons, 494 U.S. at 755, 110 S.Ct. at 1452; see Sochor, --- U.S. at ----, 112 S.Ct. at 2123 ("remand ... for proceedings not inconsistent with this opinion"). Similarly, after concluding that a defendant's rights under the Eighth Amendment had been violated by the weighing of an unconstitutionally vague aggravating factor and that this error had not been cured, the Supreme Court has remanded to a federal court of appeals for further proceedings consistent with its opinion, rather than providing specific instructions on remand. See Stringer, --- U.S. at ----, 112 S.Ct. at 1140. Because the Court has followed an identical procedure for state courts, which the majority acknowledges may conduct harmless error review, I fail to see how, as the majority maintains, the failure of the Court to include specific instructions to conduct harmless error analysis on remand to a federal court of appeals supports its position, particularly since federal habeas courts must not grant relief based on trial errors that were harmless.
 
 
 108
 The majority next points to opinions from two other courts of appeals as supporting the approach it takes. In Wiley v. Puckett, 969 F.2d 86, 94 n. 8 (5th Cir.1992), the Fifth Circuit, without analysis, summarily took the position now taken by the majority, relying on the same Supreme Court language. As I have previously discussed above, this language does not control our decision because it does not address the question before our court. In addition, when read in context, the language simply does not support the conclusion that federal habeas courts are not authorized to conduct harmless error review of Smith's heinousness claim. I do not read the second case, Jeffers v. Lewis, 974 F.2d 1075, 1084 & n. 11 (9th Cir.1992), as having addressed this issue. Thus, I do not view either of the circuit court opinions relied upon by the majority as being particularly persuasive.
 
 
 109
 Finally, the holding by the majority means an error that the district court, the majority, and I agree was harmless will result in reversal of Smith's sentence. Because the state court did not find the instruction erroneous, it did not, on direct or collateral review, have any occasion to conduct a harmless error analysis. Further, by its own decision, the Supreme Court of North Carolina has no jurisdiction to conduct this analysis now. The opportunity to conduct harmless error analysis was first presented in federal habeas court, not state court, and we are adequately equipped to conduct it. The result the majority reaches is at odds with the purposes of harmless error analysis in federal habeas review--fostering regard for the criminal judicial process by disregarding errors that have not contributed to the result and granting relief from final state convictions and sentences only to those petitioners who can demonstrate that they have been grievously wronged.
 
 B.
 
 110
 On direct review from a state appellate court, the Supreme Court has stated that the weighing by a sentencing jury of an unconstitutionally vague aggravating factor in deciding to impose a sentence of death is harmless error if either: 1) beyond a reasonable doubt the sentence would have been the same had the unconstitutionally vague aggravating circumstance not been injected into the mix, or 2) beyond a reasonable doubt the sentence would have been the same had the factor been defined properly in instructions to the jury. See Clemons, 494 U.S. at 753-54, 110 S.Ct. at 1450-51. Very recently, in Brecht v. Abrahamson, --- U.S. ----, ----, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993), the Supreme Court held that the harmless error standard announced in Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946), "applies in determining whether habeas relief must be granted because of constitutional error of the trial type." Thus, habeas relief based on the error occasioned by the unconstitutionally vague instruction on an aggravating factor is not appropriate unless we determine that, viewing the record as a whole, the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht, --- U.S. at ----, 113 S.Ct. at 1722 (quoting Kotteakos, 328 U.S. at 776, 66 S.Ct. at 1253). Because I conclude that the error is harmless under both the Chapman and Kotteakos standards, because the Supreme Court has not yet had the opportunity to explore the intricacies of application of the Kotteakos standard to the error at issue here, and because a determination that an error is harmless under the more stringent Chapman standard necessarily establishes that the error is harmless under the less onerous Kotteakos standard, I apply the more burdensome Chapman standard in assessing whether the error was harmless in Smith's case.
 
 
 111
 In State v. Martin, 303 N.C. 246, 278 S.E.2d 214, cert. denied, 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981), the Supreme Court of North Carolina addressed the argument that the "especially heinous, atrocious, or cruel" aggravating factor contained in N.C.Gen.Stat. § 15A-2000(e)(9) (Michie 1988) is unconstitutionally vague. Relying on a limiting construction adopted by the Supreme Court of Florida of an identical Florida provision that had been upheld by the United States Supreme Court in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Supreme Court of North Carolina adopted a limiting construction of its "especially heinous, atrocious, or cruel" aggravating factor. Martin, 278 S.E.2d at 220. It found that the factor applied "only in those situations where the evidence showed that the murder was committed in such a way as to amount to a conscienceless or pitiless crime which is unnecessarily torturous to the victim" and "requires ... evidence that the murder in question involved brutality in excess of that which is normally present in any killing." Id.; see also State v. Syriani, 333 N.C. 350, 428 S.E.2d 118, 139-41 (1993). This limiting construction sufficiently channels the discretion of the sentencing body, supplying the meaningful guidance necessary to avoid constitutional deficiency. See Syriani, 428 S.E.2d at 141. Thus, the weighing of the unconstitutionally vague aggravating factor by the jury in deciding to sentence Smith to death is harmless--and Smith's sentence should be upheld--if a properly instructed jury beyond a reasonable doubt would have found the existence of the aggravating factor, and, having concluded that the factor existed, imposed the death penalty.
 
 
 112
 In support of its position that, if properly instructed, the jury would have found beyond a reasonable doubt the murder especially heinous, atrocious, or cruel, the State points to the facts surrounding the murder. During the early evening hours of December 3, 1980, Smith kidnapped Whelette at gunpoint and drove her to deserted woods. The ordeal she experienced lasted many hours before she was murdered, during which Smith constantly threatened her with death and brutally raped her. Following the rape, Smith forced her to remain naked outside the automobile in freezing December temperatures for a substantial period of time, mocking her as she begged for her clothing or a blanket. Smith then bludgeoned Whelette with a cinder block and dragged her body to a quarry pond where he attempted to dispose of it. After Smith realized that these efforts were unsuccessful, he crammed her feet inside a cinder block in order to make her body sink.[15]
 
 
 113
 Based on my review of the record, I do not hesitate to conclude beyond a reasonable doubt that had the jury been properly instructed it would have found that Smith's murder of Whelette was especially heinous, atrocious, or cruel and would have imposed the death penalty.[16] If anything, the limiting construction adopted by the Supreme Court of North Carolina further compels this conclusion. Clearly, Smith's prolonged physical and psychological torture of Whelette, combined with his infliction of an agonizing death, amounted to a "conscienceless or pitiless" crime that was "unnecessarily torturous" to Whelette, and "involved brutality in excess of that which is normally present in any killing." Martin, 278 S.E.2d at 220. Accordingly, I conclude that the constitutional error that resulted from the jury weighing an unconstitutionally vague heinousness instruction in determining Smith's sentence was harmless beyond a reasonable doubt.
 
 IV. Conclusion
 
 114
 I believe that the majority incorrectly affirms the grant of relief by the district court. The procedural default principles established by the Supreme Court dictate that we should not reach the merits of Smith's contention that the jury was erroneously instructed to weigh an unconstitutionally vague aggravating factor in deciding to sentence him to death. Assuming, however, that it is appropriate to reach the merits of this claim, Smith is not entitled to relief because the error is harmless. Consequently, I would reverse the decision of the district court.
 
 
 115
 On Petition for Rehearing with Suggestion for Rehearing In Banc
 
 
 116
 July 23, 1993.
 
 
 117
 The appellant's petition for rehearing and suggestion for rehearing in banc were submitted to the Court. A majority of judges having voted in a requested poll of the Court to grant rehearing in banc,
 
 
 118
 IT IS ORDERED that the rehearing in banc is granted.
 
 
 
 [1]
 28 U.S.C. § 2254
 
 
 [2]
 The order stated:
 This matter was heard on a paperwriting entitled "Motion for Appropriate Relief" filed June 6, 1983 by [Smith's attorneys].
 The court has read the paperwriting and considered the arguments in support of the claims set out therein. The court finds as a fact that the Claims No. I, II, III, and IV, set forth no probable grounds for relief.
 It is concluded that the matters alleged in Claim[ ] No. V constitute a sufficient showing to require a plenary hearing....
 NOW THEREFORE, IT IS ORDERED THAT:
 
 
 [1]
 Claims No. I, II, III, and IV are denied
 
 
 [2]
 A plenary hearing in Claim[ ] No. V is to be held
 
 
 [3]
 Smith then filed a second Motion for Appropriate Relief in North Carolina superior court. This motion raised ineffectiveness of counsel in conceding Smith's guilt at trial and in admitting to the existence of certain aggravating circumstances. The superior court denied the motion, State v. Smith, Nos. 80 CRS 15265, 15266, 15271 (N.C.Super.Ct. Mar. 9, 1987). The Supreme Court of North Carolina denied certiorari, State v. Smith, 364 S.E.2d 668 (N.C.1988), as did the United States Supreme Court, Smith v. North Carolina, 485 U.S. 1030, 108 S.Ct. 1589, 99 L.Ed.2d 903 (1988)
 
 
 [4]
 For simplicity, we refer to the reviewability of the heinousness issue only. The State argues that Smith defaulted on two additional claims (described infra): the McKoy claim, and the claim regarding Smith's cross-examination of the pathologist. We find none of these three claims procedurally barred
 
 
 [5]
 Although the North Carolina Supreme Court denied certiorari following the superior court's decision on Smith's motion, we have held that the "last state court judgment" for Coleman purposes is the superior court's denial of the Motion for Appropriate Relief, not the North Carolina Supreme Court's denial of certiorari. Felton v. Barnett, 912 F.2d 92, 94-95 (4th Cir.1990), cert. denied, 498 U.S. 1032, 111 S.Ct. 693, 112 L.Ed.2d 683 (1991); see also Ylst v. Nunnemaker, --- U.S. ----, ---- n. 2, 111 S.Ct. 2590, 2594 n. 2, 115 L.Ed.2d 706 (1991) (noting that denial of certiorari is not a judgment)
 
 
 [6]
 Section 15A-1419(a) lists three bases for denying a motion for appropriate relief. Additionally, a state court in receipt of a motion subject to denial under 15A-1419(a) may choose to review the substance of the motion and deny it on the merits. See, e.g., State v. Price, 331 N.C. 620, 418 S.E.2d 169, 174-75 (1992) (After noting that defendant's motion for appropriate relief was "subject to being dismissed" under § 15A-1419(a)(3) because the two arguments contained in the motion could have been raised in defendant's original appeal, supreme court "nevertheless elected to review" the arguments "in the interests of both judicial economy and thorough scrutiny of this capital case," and rejected the merits of both.), vacated, --- U.S. ----, 113 S.Ct. 955, 122 L.Ed.2d 113 (1993). Therefore, Smith's heinousness claim was rejected either under § 15A-1419(a)(3) because it was procedurally barred, or on the merits
 
 
 [7]
 Both this circumstance and the language of the superior court's order weigh heavily in favor of finding that the superior court decided the merits of Claims I-IV
 
 
 [8]
 Byrd v. Delo, 942 F.2d 1226 (8th Cir.1991), holds that timing can reveal the basis for a court's order. The Byrd court concluded that an ambiguously worded rejection of a defendant's petition was based on procedural grounds, because the order was issued on the same day the petition was filed. The short turnaround indicated the lower court had not taken the time to examine the petition on the merits. Id. at 1232, distinguished in Nickerson, 971 F.2d at 1129 n. 5
 
 
 [9]
 The dissent maintains that Smith could have raised this issue in his direct appeal. Dissenting opinion at 683. That would have been impossible, since the gist of Smith's argument is that he was denied the effective assistance of counsel in his direct appeal:
 [T]he North Carolina Supreme Court, at the time it considered and decided defendant's case on appeal, had not provided for any clear and regular system of appellate sentence review, nor had it disclosed what standards governed its discharge of its statutory duty. As of the date defendant's case was reviewed by the Court, over four years had elapsed since the effective date of the punishment statute without any indication from the Court of the standards that would guide counsel in effectively representing their clients on an issue of, literally, life or death.
 Without any articulated standards for review, defendant's counsel was unable adequately to prepare or to present argument to the Court on the proportionality issue, rendering meaningless defendant's Sixth Amendment right to the assistance of counsel for his appellate defense.
 Motion for Appropriate Relief, Nos. 80 CRS 15265, 15266, 15271, at 5758 (N.C.Super.Ct. filed June 6, 1983) (citation omitted).
 
 
 [10]
 Section 15A-1419(a)(2) provides that a Motion for Appropriate Relief may be denied when "[t]he ground or issue underlying the motion was previously determined on the merits upon an appeal from the judgment." For purposes of federal habeas review, a denial under this section is clearly based on the merits, not on procedural default. See Coleman, --- U.S. at ----, 111 S.Ct. at 2554 (stating that a defendant is procedurally barred when he fails to meet a state procedural requirement through his error). As the official commentary to § 15A-1419 makes clear, (a)(2) provides that "if a matter has been determined on the merits upon an appeal, ... there is no right to litigate the matter again in a[ ] ... motion for appropriate relief" (emphasis added). There remains, of course, the right to litigate the matter before a federal habeas court. A denial under (a)(2) is a holding that the state has addressed the federal claim on the merits. Because the state's ruling is based on grounds that are not independent of the federal claims, there is no basis to apply the independent and adequate state grounds doctrine, which "bar[s] federal habeas when [the state] declined to address a prisoner's federal claims." Coleman, --- U.S. at ----, 111 S.Ct. at 2554 (emphasis added)
 As the Supreme Court has revealed, if the last explained state judgment (here, Smith's direct appeal) fairly appears to rest primarily on federal law, the federal court should "presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place." Ylst v. Nunnemaker, --- U.S. ----, ----, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). Under this "look-through" presumption, the federal habeas court " 'looks through' [the unexplained order] to the last reasoned decision." Id. at ----, 111 S.Ct. at 2595. Overcoming the presumption requires "strong evidence." Id. For example, unlike here "it might be shown that, even though the last reasoned state-court opinion had relied upon a federal ground, the later appeal to the court that issued the unexplained order was plainly out of time, and that the latter court did not ordinarily waive such a procedural default without saying so." Id. at ----, 111 S.Ct. at 2596; see James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 24.2(e), at 316-17 (1992 Supp.).
 As further support for the proposition that a denial under § 15A1419(a)(2) is substantive, not procedural, for purposes of federal habeas review, the official commentary states that the provision is based on N.Y.Crim.Proc.Law 440.10, which the Second Circuit has interpreted as creating a ruling on the merits. See Silverstein v. Henderson, 706 F.2d 361, 368 (2d Cir.) (State court's denial of collateral relief under § 440.10(2)(a) following state appellate court's rejection of defendant's federal claim on the merits "does not constitute a finding of procedural default that would bar federal consideration of Silverstein's claims."), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); accord Maxwell v. Sumner, 673 F.2d 1031, 1034 (9th Cir.) (applying California law), cert. denied, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982).
 
 
 [11]
 The State also concedes that Maynard applies retroactively. See Stringer v. Black, --- U.S. ----, ----, 112 S.Ct. 1130, 1135, 117 L.Ed.2d 367 (1992) (holding that Maynard did not create a new rule under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989))
 
 
 [12]
 The Supreme Court has found this definition constitutional. Proffitt v. Florida, 428 U.S. 242, 255-56, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976)
 
 
 [13]
 The Brecht Court held that constitutional errors of the "trial" type are subject to a lower standard of harmless-error analysis on federal habeas review (error must not cause "actual prejudice," see Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)) than on direct appeal (error must be harmless beyond a reasonable doubt, see Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). Brecht, --- U.S. at ----, 113 S.Ct. at 1721-22. Thus, Brecht created the following anomaly: If a state court conducts harmless-error review of a constitutional error, the defendant has the advantage of the State having to prove harmlessness beyond a reasonable doubt. If, however, the state court does not discover the error (as here), or does not review it for harmlessness (as here), the defendant is handicapped, since, on federal habeas review, the State has only to establish that the error did not "substantially prejudice" the jury's decision. See id. at ----, 113 S.Ct. at 1725 (White, J., dissenting) (explaining the "illogically disparate treatment" caused by Brecht)
 The Supreme Court recently indicated that the lower Brecht standard of review applies to federal habeas review of capital sentencing errors. Applying the Chapman standard on habeas review, the Eleventh Circuit had found an invalid aggravating factor not harmless; the Supreme Court vacated the decision and remanded it for further consideration in light of Brecht. See Singletary v. Duest, --- U.S. ----, 113 S.Ct. 1940, 123 L.Ed.2d 647 (1993), vacating 967 F.2d 472 (11th Cir.1992); see also Singletary v. Smith, --- U.S. ----, 113 S.Ct. 1940, 123 L.Ed.2d 646 (1993), vacating 970 F.2d 766 (11th Cir.1992). Notably, however, the Eleventh Circuit had not conducted harmless-error analysis in the first instance; it had reviewed a decision by the Florida Supreme Court finding the error harmless. That is not the case here.
 The Supreme Court's repeated references to state court harmless-error review of invalid aggravating factors indicate that it meant for state courts to conduct such review in the first instance. Therefore, it intended not to apply the Brecht anomaly in cases tainted by invalid aggravating factors. We observe the Court's intention through the approach we adopt today. By holding that the North Carolina state courts are the only courts with the authority to conduct harmless-error analysis of the vagueness error in Smith's case in the first instance, we avoid the possibility of a federal habeas court reviewing the error in the first instance under the lower "actual prejudice" standard. This approach not only is counseled by language in several Supreme Court opinions, it also ensures reliability, which is of paramount importance in capital cases, see, e.g., Herrera v. Collins, --- U.S. ----, ----, 113 S.Ct. 853, 863, 122 L.Ed.2d 203 (1993), and promotes fundamental fairness for defendants whose death sentences have been tainted by invalid aggravating factors. See Brecht, --- U.S. at ----, 113 S.Ct. at 1729 (O'Connor, J., dissenting).
 
 
 [14]
 McKoy and Mills apply retroactively. Williams v. Dixon, 961 F.2d 448, 456 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992). Because the district court ruled on Smith's habeas petition before we issued our opinion in Williams, it mistakenly concluded that no McKoy error could be found in Smith's case because McKoy did not apply retroactively. See Smith, 766 F.Supp. at 1377-78
 
 
 [15]
 The verdict form in Smith's case asked the jury to answer four questions: (1) whether it unanimously found any of the four aggravating circumstances listed on the form, (2) whether it found any of the five mitigating circumstances listed on the form, (3) whether it unanimously found beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances, and (4) whether it unanimously found beyond a reasonable doubt that the aggravating circumstances were substantial enough to warrant the death penalty
 
 
 [16]
 Under Caldwell, "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328-29, 105 S.Ct. at 2639
 
 
 [1]
 Smith filed a second Motion for Appropriate Relief, which has no bearing on the issues presented in this appeal, prior to filing this action in the district court
 
 
 [2]
 Smith asserts on cross-appeal that he is entitled to relief because: the jury was erroneously led to believe that it could not consider mitigating evidence in sentencing unless it unanimously determined the existence of the mitigating circumstance; the sentencing instructions and arguments of counsel incorrectly informed the jury that its verdict was not a binding determination; the trial court improperly abridged his right to crossexamine a witness presented during the guilt phase of his trial; and his appellate and trial counsel were ineffective. The majority correctly determines that the issues raised by Smith in his cross-appeal lack merit
 Because only resolution of whether the heinousness claim is procedurally barred would consequently have an impact on the result reached by the majority, for ease of reference, I address, as does the majority, only whether Smith's heinousness claim has been procedurally defaulted. However, the issues raised in Smith's cross-appeal, except his allegations of ineffective assistance of counsel, were also summarily denied by the superior court in adjudicating Claims I through IV of his Motion for Appropriate Relief and were not raised by Smith on direct appeal; therefore, the same reasoning applicable to his heinousness claim dictates that these remaining claims also are procedurally defaulted.
 
 
 [3]
 Again without the benefit of authority, the majority contends that it would have been impossible for Smith to have asserted his attack on the constitutional adequacy of the North Carolina system of appellate review of capital sentences because "the gist of Smith's argument is that he was denied the effective assistance of counsel in his direct appeal." At 674 n. 9. Reference to Smith's claim, captioned "The Constitutional Inadequacy of North Carolina's System of Appellate Review of Death Sentences," leads me to believe that the majority mischaracterizes the "gist" of Smith's claim as one of ineffective assistance of counsel. Rather, this claim raises numerous attacks on the failure of the Supreme Court of North Carolina "to develop and to articulate a constitutionally adequate and meaningful system of appellate sentencing review, and to apply such a system in its review of [Smith's] case" in violation of the Sixth, Eighth, and Fourteenth Amendments. Motion for Appropriate Relief at 57, State v. Smith, Nos. 80-CR-15265, 15266, 15271 (N.C.Sup.Ct. filed June 6, 1983). Be that as it may, Smith's argument in this claim does encompass an assertion that the failure of the Supreme Court of North Carolina to provide standards for review deprived Smith of his Sixth Amendment right to counsel because it rendered counsel unable to adequately prepare or present argument. While, as discussed at length below in Section II.B.2. of my dissent, allegations of ineffective assistance of counsel are generally properly raised on collateral review because an evidentiary hearing exploring counsel's alleged unprofessional errors and their prejudicial impact on the defendant is necessary, see, United States v. Lurz, 666 F.2d 69, 78 (4th Cir.1981), cert. denied, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874; 457 U.S. 1136, 102 S.Ct. 2966, 73 L.Ed.2d 1354, and 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982), nothing prevented Smith from adequately raising this claim on direct review. Smith's attack on the constitutional adequacy of the North Carolina appellate review scheme raised a legal question concerning the effect of the failure of the Supreme Court of North Carolina to develop standards governing capital sentencing review; the claim did not assert that his appellate counsel committed unprofessional errors resulting in prejudice to him. Therefore, this argument properly would have been presented on direct review. Cf. State v. Dockery, 78 N.C.App. 190, 336 S.E.2d 719, 721 (N.C.Ct.App.1985) (refusing to consider ineffective assistance of counsel claim on direct appeal because an evidentiary hearing was necessary to explore the viability of the defendant's alibi defense and whether prejudice resulted from defense counsel's failure to present it); United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (addressing on direct appeal legal question of whether prejudice could be presumed from circumstances of counsel's representation absent inquiry into counsel's actual performance, but noting that, on remand, court of appeals must consider government's argument that claims of counsel's ineffectiveness should be raised in collateral proceedings)
 
 
 [4]
 Because the issue addressed by the majority is irrelevant to the issue actually before the court, I decline to address the arguments formulated by the majority concerning the reviewability by a federal habeas court of arguments raised on direct appeal and subsequently dismissed pursuant to § 15A-1419(a)(2). I must, however, make one observation. If these claims are reviewable, the correct reasoning to this result would not be to deem a ruling under § 15A-1419(a)(2) as a substantive review of the merits. Section 15A-1419(a)(2) permits a superior court ruling on a motion for appropriate relief to deny summarily claims that were previously decided by the Supreme Court of North Carolina. The efficacy of the statute is that it permits a lower state court to avoid reviewing the merits of claims that have previously been decided by the higher court. Clearly, because there is no need for a lower state court to attempt to review the merits of those issues again on collateral review, disposition under this section cannot logically be viewed as a decision on the merits. Finally, Smith has not raised this argument in his federal habeas petition
 
 
 [5]
 Smith also argues that the State has acknowledged that the superior court reached the merits of Claims I through IV. Although the document is not a part of the record before us, according to Smith, in its petition to the Supreme Court of North Carolina following the issuance of the memorandum opinion of the federal district court, the State wrote that Smith's claim of unconstitutional vagueness "initially surfaced during Smith's first motion for appropriate relief and was summarily denied on the merits by the hearing court." The State maintains that the insertion of the words "on the merits" in its petition was merely a misstatement. Smith does not dispute that the inclusion of the language in the petition was anything but a misstatement. Smith does not maintain that the State has taken an inconsistent position during the litigation to gain any type of advantage, nor does Smith claim he has been prejudiced by this inadvertent error. Under these circumstances, this assertion is meritless
 
 
 [6]
 The order of the superior court provides in pertinent part:
 The court has read the paperwriting and considered the arguments in support of the claims set out therein. The court finds as a fact that the Claims No. I, II, III and IV set forth no probable grounds for relief.... Claims No. I, II, III and IV are denied.
 
 
 [7]
 In addition, the summary order does not provide any clear indication that the basis for the decision was federal law; the summary order does not even refer to federal law. Cf. Coleman, --- U.S. at ----, 111 S.Ct. at 2559 (discussing why the Harris presumption did not apply and relying on the fact that the Virginia order did not mention federal law). This fact is significant in view of the importance the Supreme Court has placed on the necessity of a clear indication that federal law controlled the decision prior to applying the Harris presumption. See id. --- U.S. at ----, 111 S.Ct. at 2558-59. My reading of Coleman and the justification that the Court offered for rejecting application of the Harris presumption in all cases in which the state court did not include a plain statement that its judgment rested on an independent and adequate state ground leads me to believe that when an ambiguous state order fails to mention federal law or indicate in some manner that it was decided on the merits of federal claims, a federal habeas court should not apply the presumption
 It is unlikely that application of the Harris presumption in these circumstances will reach the correct result most of the time. Indeed, it is likely to rarely, if ever, reach the correct result. Logic and reason dictate that it is unlikely that a busy state trial judge presented with a 76-page motion for post-conviction relief containing in excess of 50 issues--some of which raise complicated constitutional questions--would, without so much as conducting a hearing or requesting a response from the State, consider and decide the merits of those claims when they are subject to a state procedural bar. It is far more likely, in my view, that such a summary disposition rested on the available state procedural rule permitting summary disposition. Even more unlikely is that a state trial judge would attempt to reach the merits of claims that had already been addressed and decided by a higher court in the petitioner's direct appeal. It defies the probabilities to conclude that the basis for such an unexplained summary disposition was federal law.
 Further, in my view, the "set forth no probable grounds for relief" wording of the summary order denying Smith's Claims I through IV does not imply a disposition on the merits. This language provides no insight into whether the reason the petitioner's arguments set forth no probable grounds for relief was because they lacked merit or because they were procedurally barred. Although our prior decision in Nickerson requires that some significance be assigned to this language, it does not compel a result different from the one that I believe to be correct.
 
 
 [8]
 Byrd v. Delo, 942 F.2d 1226 (8th Cir.1991) (filing and denial of petition on same day demonstrated that the denial was based on a state procedural rule); Hunter v. Aispuro, 958 F.2d 955, 958 (that dispositive state grounds argued to court indicates its summary order was based on them), withdrawn and reh'g granted, 976 F.2d 1558, on reh'g, 982 F.2d 344 (9th Cir.1992)
 
 
 [9]
 The majority holds that it is only because it concludes that there are no surrounding circumstances indicating that the summary order rested on state grounds that it finds Nickerson controlling
 
 
 [10]
 The only case to which Smith can point for support for his position that the Supreme Court of North Carolina will reach the merits on collateral review of issues that a petitioner could have raised, but failed to raise, on direct appeal is State v. Price, 331 N.C. 620, 418 S.E.2d 169, 174-75 (1992), vacated, --- U.S. ----, 113 S.Ct. 955, 122 L.Ed.2d 113 (1993). In Price, the Supreme Court of North Carolina elected to review arguments made in a petitioner's motion for appropriate relief that could have been raised in the original appeal, relying on N.C.Gen.Stat. § 15A-1419(b) (Michie 1988). Although the court determined that these arguments were defaulted under § 15A-1419(a), it concluded that review of the additional arguments was warranted. Reasoning that the petitioner's direct appeal was then still pending before it following a remand from the United States Supreme Court, the Supreme Court of North Carolina relied on its well-established rule, that in its direct review of capital cases it will consider all errors, in reaching its decision to hear the arguments raised in the motion for appropriate relief. See id. Because the Supreme Court of North Carolina relied on the fact that the petitioner's direct appeal was still pending, Price does not sustain Smith's argument that procedural bars are not consistently applied in collateral review of capital cases
 
 
 [11]
 This section provides:
 Although the court may deny the motion [for appropriate relief] under any of the circumstances specified in this section, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious.
 N.C.Gen.Stat. § 15A-1419(b).
 
 
 [12]
 Smith also relies on Richardson v. Turner, 716 F.2d 1059, 1062 (4th Cir.1983), in which this court remanded to permit a habeas petitioner to exhaust a previously unexhausted claim. Although the claim had not been raised in a prior appeal and would therefore have been subject to the procedural bar provision of § 15A-1419(a), we were unable to find that exhaustion necessarily would have been futile based on the exception contained in § 15A-1419(b). Richardson, 716 F.2d at 1062. Merely because the state court may choose in a given case to review a claim in the interests of justice, however, does not mean that the procedural bar is not consistently applied. Cf. Meadows, 904 F.2d at 907
 
 
 [13]
 Although I address this question in the context of excusing Smith's procedural default, the majority considered this identical issue in considering the arguments raised in Smith's cross-appeal
 
 
 [14]
 It is precisely for this reason that the distinction the majority attempts to create in order to avoid the result that surely must follow from the recent Brecht decision, and the actions taken by the Supreme Court in light of Brecht, lacks merit. The majority argues that the vacation by the Supreme Court of the Duest decision of the Eleventh Circuit for reconsideration in light of Brecht does not indicate that the Supreme Court intends for a federal court to grant habeas relief only when it concludes that the error occasioned by consideration of an invalid aggravating factor in capital sentencing proceedings is not harmless under the standard established in Brecht. See Singletary v. Duest, --- U.S. ----, 113 S.Ct. 1940, 123 L.Ed.2d 647 (1993). Rather, the majority notes that the Florida Supreme Court had considered whether the error was harmless before the petitioner sought relief from a federal court and argues that a federal court conducting harmless error review in the first instance is somehow different from conducting the same review after the state courts have considered the question. This distinction lacks merit because a federal habeas court considers the question of whether an error is harmless de novo, giving no deference to a decision of the state court on this question. Indeed, the Eleventh Circuit in Duest specifically noted that "federal courts are not bound by state court determinations as to whether Constitutional error is harmless," and thus held that it was not required to defer to the decision of the Florida Supreme Court, holding the consideration of the invalid aggravating factor harmless, in reaching its decision that the error was not harmless. Duest v. Singletary, 967 F.2d 472, 480 (11th Cir.1992), vacated --- U.S. ----, 113 S.Ct. 1940, 123 L.Ed.2d 647 (1993). Because the Supreme Court has indicated that federal habeas courts may assess whether the constitutional error occasioned by the weighing of an invalid aggravating factor in capital sentencing is harmless, see Singletary v. Duest, --- U.S. ----, 113 S.Ct. 1940, and because the Supreme Court has stated that a federal habeas court must not grant relief on the basis of errors that may be assessed for harmlessness unless it determines that errors are not harmless, see Brecht, --- U.S. at ----, 113 S.Ct. at 1722, in my view this court must not affirm the grant of habeas relief by the district court unless we conclude that the error occasioned by the weighing of an unconstitutionally vague aggravating factor by the jury during Smith's sentencing proceedings was harmless under the standard established in Brecht
 
 
 [15]
 Kidnapped with Whelette were two female classmates who Smith kept locked in the trunk of his automobile for most of the night. They escaped a couple of hours before dawn the following morning, after Smith had murdered Whelette, and lived to supply many of the details of her ordeal
 
 
 [16]
 Because I find beyond a reasonable doubt that the jury would have found Whelette's murder was especially heinous, atrocious, or cruel if it had been properly instructed and that the jury would have imposed the death penalty, it is unnecessary to address whether beyond a reasonable doubt the jury would have imposed the death penalty based on the other aggravating factors without consideration of the heinousness factor